1  RYAN S. FIFE (SBN 235000)
2  DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1500
3  Los Angeles, CA  90067-1517
   Telephone:   (310) 203-4000
4  Facsimile:   (310) 229-1285
5  Email:  ryan.fife@dbr.com

6
   Jason P. Gosselin (*pro hac vice* motion to be filed)
7  Katherine L. Villanueva (*pro hac vice* motion to be filed)
8  DRINKER BIDDLE & REATH LLP
   One Logan Square, Suite 2000
9  Philadelphia, PA  19103-6996
   Telephone:  (215) 988-2700
10 Facsimile:  (215) 988-2757
11 Email:  jason.gosselin@dbr.com
12 katherine.villanueva@dbr.com

13
   Attorneys for Defendant
14 LINCOLN BENEFIT LIFE COMPANY

15
                UNITED STATES DISTRICT COURT
16
             EASTERN DISTRICT OF CALIFORNIA
17

18 KAMIES ELHOUTY                      Case No. 1:14-CV-00676-LJO-JLT
19
                                       **DECLARATION OF KATHERINE**
20            Plaintiff,               **VILLANUEVA IN SUPPORT OF**
                                       **DEFENDANT LINCOLN BENEFIT**
21                                     **LIFE COMPANY'S  MOTION FOR**
   v.                                  **SUMMARY JUDGMENT**
22

23 LINCOLN BENEFIT LIFE
24 COMPANY, a Nebraska corporation,    Hearing Date:     August 5, 2015
   and DOES 1 through 10, inclusive.   Time:             8:30 am
25                                     Courtroom:        4
26
              Defendants.              Complaint Filed:  Mar. 19, 2014
27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

DECLARATION OF K. VILLANUEVA                    Case No. 14-CV-00676-LJO-JLT

I, Katherine Villanueva, declare:

1.　　I am an associate with the law firm of Drinker Biddle & Reath LLP, counsel for Defendant Lincoln Benefit Life Company ("Lincoln Benefit").　I make the following declaration in support of Lincoln Benefit's Motion for Summary Judgment.

2.　　Attached as Exhibit A is a true and correct copy of Policy No. 01N1288753.[1]

3.　　Attached as Exhibit B is a true and correct copy of the July 23, 2013 notice.

4.　　Attached as Exhibit C is a true and correct copy of the September 22, 2013 lapse notice.

5.　　Attached as Exhibit D is a true and correct copy of the October 1, 2013 letter.

6.　　On June 11, 2015, I sent to counsel for Plaintiff, David Beitchman, a proposed joint statement of undisputed facts.

7.　　On June 16, 2015, Mr. Beitchman and I participated in a telephone conference during which we discussed the issues to be raised in this motion, including the proposed joint statement of undisputed facts.

8.　　On June 16, 2015, Mr. Beitchman provided me with a revised joint statement of undisputed facts, a true and correct copy of which is attached hereto as Exhibit E.

9.　　On July 6, 2015, Mr. Beitchman authorized me to affix his electronic signature to the joint statement of undisputed facts.　*See* Exhibit F.

---

[1] Confidential medical and financial information and personal identifiers have been redacted.

1

2

3      I declare under penalty of perjury under the laws of the United States that the

4  foregoing is true and correct.

5      Executed in Philadelphia, Pennsylvania, this 8th day of July 2015.

6

7

8

9  _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# Lincoln Benefit Life Company

A Stock Company

Home Office: 2940 South 84th Street, Lincoln, Nebraska 68506-4142

---

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

|  |  |  |  |
|---|---|---|---|
| Insured: | SALIM FRIWAT | | |
| Payment Class: | NON-SMOKER TABLE RATING | | |
| Issue Age: | | Face Amount: | 2,000,000 |
| Sex: | MALE | Issue Date: | 02/23/2006 |
| Policy Number: | 01N1288753 | Monthly Activity Day: | 23rd Day of the Month |

### THIS IS A LEGAL CONTRACT--READ IT CAREFULLY

Lincoln Benefit Life Company promises to pay the death benefit on death of the insured upon receipt of the due proof of death of the insured, subject to the terms and conditions of this policy. Minimum premium is required in the first policy year. Premium payments are flexible for life. This policy does not pay dividends.

Please examine the application. We issued this policy based upon the answers in the application (copy included). If all answers are not complete and true, the policy may be affected.

#### Right To Cancel Your Policy
IMPORTANT: YOU HAVE PURCHASED A LIFE INSURANCE POLICY. CAREFULLY REVIEW IT FOR LIMITATIONS. THIS POLICY MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND EITHER BY RETURNING IT TO LINCOLN BENEFIT LIFE COMPANY OR THE AGENT WHO SOLD YOU THIS POLICY. AFTER 30 DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE. THE SURRENDER CHARGE SCHEDULE IS LOCATED IN THE POLICY DATA SECTION OF YOUR POLICY.

Michael J. Velotta
Secretary

B. Eugene Wraith
President

UL 0400

Page 1

Elhouty000002

# Table of Contents

Policy Data ............................................................................................. Page 3
Definitions ............................................................................................. Page 7
Death Benefit ............................................................................................. Page 8
Beneficiary ............................................................................................. Page 9
Ownership ............................................................................................. Page 9
Premium Payment ............................................................................................. Page 10
Policy Value ............................................................................................. Page 11
Surrender Value ............................................................................................. Page 12
Loans ............................................................................................. Page 13
Other Terms of Your Policy ............................................................................................. Page 14
Application ............................................................................................. Insert
Riders (if any) ............................................................................................. Insert

Elhouty000003

## Policy Data

|  |  |  |  |
|---|---|---|---|
| Insured: | SALIM FRIWAT | | |
| Payment Class: | NON-SMOKER TABLE RATING | | |
| Issue Age: | 61 LOV02U | Face Amount: | 2,000,000 |
| Sex: | MALE | Issue Date: | 02/23/2006 |
| Policy Number: | 01N1288753 | Monthly Activity Day: | 23rd Day of the Month |

### Benefit Description

|  | Year of Expiry or Maturity |
|---|---|
| Flexible Premium Adjustable Life Insurance-(Death Benefit Option 1) | Life |
| Coverage Protection Rider (See Page 6A & 6B for Details) | Life |

### Payment Information

| | |
|---|---|
| Minimum Initial Payment | 125,895.96 |
| Planned ANNUAL Payment | 125,896.00 |

UL 0400

*Page 3*

Elhouty000004

## Interest Rates

**Interest Rates:**

| | |
|---|---|
| Minimum Guaranteed Annual Interest Rate | 3.00% |
| Loan Credited Rate | 4.00% |
| Maximum Loan Interest Rate Charge | 5.00% |

## Schedule of Expense and Surrender Charges

**Expense Charges:**

| | |
|---|---|
| Maximum Monthly Policy Fee | $10.00 |
| Premium Expense Charge | 6.00% |
| Monthly Administrative Expense Charge (per $1000 of initial face amount) | |
| Policy Year 1-6 | $0.50 |
| Policy Year 7+ | $0.00 |
| Partial Withdrawal Service Fee | $25.00 |

**Surrender Charges:**

| Policy Year | Amount of Charge | Policy Year | Amount of Charge | Policy Year | Amount of Charge |
|---|---|---|---|---|---|
| 1 | 106,140.00 | 8 | 72,175.20 | 15 | 40,333.20 |
| 2 | 99,771.60 | 9 | 67,929.60 | 16 | 32,903.40 |
| 3 | 94,464.60 | 10 | 64,745.40 | 17 | 24,412.20 |
| 4 | 90,219.00 | 11 | 60,499.80 | 18 | 16,982.40 |
| 5 | 84,912.00 | 12 | 56,254.20 | 19 | 9,552.60 |
| 6 | 80,666.40 | 13 | 52,008.60 | 20 | 0.00 |
| 7 | 76,420.80 | 14 | 47,763.00 | | |

Elhouty000005

## Surrender Charge Factors

| Issue Age | Male PE | Male P-NS | Male Std.NS | Male P-SM | Male Std.SM | Issue Age | Male PE | Male P-NS | Male Std.NS | Male P-SM | Male Std.SM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 8.43 | 9.12 | 11.19 | 13.29 | 16.44 | 64 | n/a | 56.72 | 56.72 | 56.68 | 54.55 |
| 19 | 8.64 | 9.36 | 11.46 | 13.62 | 16.86 | 65 | n/a | 56.22 | 55.80 | 55.79 | 54.51 |
| 20 | 8.91 | 9.63 | 11.82 | 14.04 | 17.37 | 66 | n/a | 56.16 | 55.73 | 55.74 | 54.46 |
| 21 | 9.24 | 9.96 | 12.24 | 14.55 | 18.00 | 67 | n/a | 56.08 | 55.66 | 55.69 | 54.41 |
| 22 | 9.63 | 10.38 | 12.75 | 15.15 | 18.72 | 68 | n/a | 56.01 | 55.58 | 55.63 | 54.35 |
| 23 | 10.08 | 10.86 | 13.35 | 15.84 | 19.15 | 69 | n/a | 55.93 | 55.50 | 55.57 | 54.29 |
| 24 | 10.59 | 11.43 | 14.04 | 16.65 | 19.52 | 70 | n/a | 55.00 | 54.16 | 54.24 | 53.39 |
| 25 | 11.19 | 12.09 | 14.82 | 17.58 | 19.92 | 71 | n/a | 54.94 | 54.09 | 54.19 | 53.34 |
| 26 | 11.37 | 12.27 | 15.03 | 17.85 | 20.32 | 72 | n/a | 54.88 | 54.03 | 54.16 | 53.31 |
| 27 | 11.61 | 12.51 | 15.33 | 18.21 | 20.74 | 73 | n/a | 54.83 | 53.99 | 54.14 | 53.29 |
| 28 | 11.91 | 12.84 | 15.72 | 18.66 | 21.19 | 74 | n/a | 54.80 | 53.95 | 54.08 | 53.23 |
| 29 | 12.27 | 13.23 | 16.20 | 19.23 | 21.64 | 75 | n/a | 53.07 | 53.07 | 53.15 | 52.31 |
| 30 | 12.72 | 13.71 | 16.77 | 19.92 | 21.79 | 76 | n/a | 53.02 | 53.02 | 53.07 | 52.23 |
| 31 | 13.23 | 14.28 | 17.46 | 20.73 | 22.31 | 77 | n/a | 52.94 | 52.94 | 53.01 | 52.17 |
| 32 | 13.83 | 14.94 | 18.27 | 21.69 | 22.87 | 78 | n/a | 52.88 | 52.88 | 52.96 | 52.12 |
| 33 | 14.55 | 15.72 | 19.20 | 22.80 | 23.45 | 79 | n/a | 52.82 | 52.82 | 52.93 | 52.08 |
| 34 | 15.36 | 16.62 | 20.28 | 24.09 | 24.08 | 80 | n/a | 48.57 | 48.57 | 48.69 | 48.69 |
| 35 | 16.44 | 17.76 | 21.32 | 24.73 | 24.11 | 81 | n/a | n/a | 48.53 | n/a | 48.66 |
| 36 | 16.71 | 18.06 | 21.85 | 25.43 | 24.81 | 82 | n/a | n/a | 48.49 | n/a | 48.62 |
| 37 | 17.07 | 18.45 | 22.43 | 26.15 | 25.54 | 83 | n/a | n/a | 48.44 | n/a | 48.57 |
| 38 | 17.55 | 18.96 | 23.02 | 26.92 | 26.31 | 84 | n/a | n/a | 48.41 | n/a | 48.54 |
| 39 | 18.15 | 19.59 | 23.66 | 27.74 | 27.13 | 85 | n/a | n/a | 48.40 | n/a | 48.55 |
| 40 | 18.87 | 20.37 | 24.32 | 28.59 | 27.54 | | | | | | |
| 41 | 19.71 | 21.30 | 25.02 | 29.49 | 28.45 | | | | | | |
| 42 | 20.70 | 22.38 | 25.76 | 30.43 | 29.39 | | | | | | |
| 43 | 21.87 | 23.64 | 26.53 | 31.43 | 30.39 | | | | | | |
| 44 | 23.22 | 25.11 | 27.35 | 32.48 | 31.44 | | | | | | |
| 45 | 25.59 | 27.42 | 28.20 | 33.57 | 32.52 | | | | | | |
| 46 | 26.01 | 27.87 | 29.10 | 34.71 | 33.67 | | | | | | |
| 47 | 26.55 | 28.47 | 30.06 | 35.91 | 34.87 | | | | | | |
| 48 | 27.27 | 29.22 | 31.06 | 37.17 | 36.13 | | | | | | |
| 49 | 28.14 | 30.15 | 32.13 | 38.52 | 37.48 | | | | | | |
| 50 | 29.19 | 31.29 | 33.10 | 39.79 | 38.06 | | | | | | |
| 51 | 30.45 | 32.64 | 34.31 | 41.32 | 39.59 | | | | | | |
| 52 | 31.92 | 34.23 | 35.59 | 42.93 | 41.20 | | | | | | |
| 53 | 33.63 | 36.09 | 36.96 | 44.65 | 42.92 | | | | | | |
| 54 | 35.64 | 38.25 | 38.41 | 46.45 | 44.72 | | | | | | |
| 55 | 39.52 | 39.52 | 39.52 | 47.92 | 45.76 | | | | | | |
| 56 | 40.56 | 41.14 | 41.14 | 49.91 | 47.75 | | | | | | |
| 57 | 41.46 | 42.85 | 42.85 | 52.00 | 49.84 | | | | | | |
| 58 | 42.63 | 44.68 | 44.68 | 54.21 | 52.06 | | | | | | |
| 59 | 44.07 | 46.63 | 46.63 | 56.57 | 54.42 | | | | | | |
| 60 | 45.81 | 48.73 | 48.73 | 56.86 | 54.72 | | | | | | |
| 61 | n/a | 50.98 | 50.98 | 56.81 | 54.67 | | | | | | |
| 62 | n/a | 53.38 | 53.38 | 56.76 | 54.63 | | | | | | |
| 63 | n/a | 55.91 | 55.91 | 56.72 | 54.58 | | | | | | |

Elhouty000006

## Surrender Charge Percentages

**Male Preferred Elite**

| Age | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 | Year 11 | Year 12 | Year 13 | Year 14 | Year 15 | Year 16 | Year 17 | Year 18 | Year 19 | Year 20+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18-40 | 100 | 100 | 100 | 100 | 100 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 41-54 | 100 | 100 | 100 | 100 | 99 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 55-60 | 100 | 97 | 95 | 93 | 91 | 88 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |

**Male Preferred Non-Smoker**

| Age | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 | Year 11 | Year 12 | Year 13 | Year 14 | Year 15 | Year 16 | Year 17 | Year 18 | Year 19 | Year 20+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18-40 | 100 | 100 | 100 | 100 | 100 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 41-54 | 100 | 98 | 96 | 94 | 93 | 89 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 55-70 | 100 | 96 | 93 | 89 | 86 | 82 | 79 | 76 | 72 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 71-80 | 100 | 94 | 89 | 85 | 80 | 76 | 73 | 68 | 64 | 61 | 57 | 53 | 49 | 45 | 38 | 31 | 23 | 16 | 9 | 0 |

**Male Standard Non-Smoker**

| Age | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 | Year 11 | Year 12 | Year 13 | Year 14 | Year 15 | Year 16 | Year 17 | Year 18 | Year 19 | Year 20+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18-25 | 100 | 100 | 100 | 100 | 100 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 26-35 | 100 | 99 | 98 | 97 | 96 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 36-45 | 100 | 98 | 96 | 94 | 93 | 91 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 46-55 | 100 | 97 | 95 | 92 | 89 | 87 | 84 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 56-64 | 100 | 96 | 93 | 89 | 86 | 82 | 79 | 76 | 73 | 69 | 65 | 58 | 50 | 43 | 36 | 29 | 31 | 14 | 7 | 0 |
| 65-74 | 100 | 95 | 91 | 86 | 82 | 78 | 74 | 70 | 67 | 63 | 60 | 56 | 53 | 50 | 42 | 34 | 25 | 17 | 9 | 0 |
| 75-80 | 100 | 94 | 89 | 85 | 80 | 76 | 72 | 68 | 64 | 61 | 57 | 53 | 49 | 45 | 38 | 31 | 23 | 16 | 9 | 0 |
| 81-85 | 100 | 94 | 89 | 84 | 80 | 75 | 70 | 64 | 58 | 52 | 45 | 37 | 30 | 24 | 19 | 14 | 10 | 5 | 0 | 0 |

**Male Preferred Smoker**

| Age | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 | Year 11 | Year 12 | Year 13 | Year 14 | Year 15 | Year 16 | Year 17 | Year 18 | Year 19 | Year 20+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18-24 | 100 | 100 | 100 | 100 | 100 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 25-34 | 100 | 100 | 97 | 96 | 95 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 35-44 | 100 | 98 | 96 | 95 | 93 | 91 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 45-54 | 100 | 97 | 94 | 92 | 89 | 86 | 84 | 81 | 78 | 72 | 65 | 57 | 50 | 43 | 36 | 28 | 21 | 14 | 7 | 0 |
| 55-64 | 100 | 96 | 93 | 89 | 86 | 83 | 79 | 76 | 73 | 70 | 67 | 64 | 59 | 50 | 42 | 33 | 25 | 16 | 8 | 0 |
| 65-80 | 100 | 95 | 90 | 85 | 81 | 77 | 73 | 69 | 66 | 63 | 60 | 57 | 54 | 49 | 41 | 33 | 25 | 17 | 9 | 0 |

**Male Standard Smoker**

| Age | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 | Year 11 | Year 12 | Year 13 | Year 14 | Year 15 | Year 16 | Year 17 | Year 18 | Year 19 | Year 20+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18-23 | 100 | 100 | 99 | 98 | 97 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 24-29 | 100 | 98 | 97 | 96 | 95 | 93 | 86 | 80 | 73 | 66 | 60 | 53 | 46 | 40 | 33 | 26 | 20 | 13 | 6 | 0 |
| 30-40 | 100 | 98 | 96 | 94 | 93 | 91 | 88 | 84 | 74 | 67 | 60 | 54 | 47 | 40 | 33 | 27 | 20 | 13 | 6 | 0 |
| 41-50 | 100 | 97 | 95 | 92 | 90 | 88 | 85 | 83 | 80 | 77 | 69 | 62 | 54 | 46 | 38 | 31 | 23 | 15 | 7 | 0 |
| 51-60 | 100 | 96 | 93 | 90 | 87 | 84 | 81 | 78 | 75 | 70 | 69 | 66 | 61 | 53 | 44 | 35 | 26 | 17 | 8 | 0 |
| 61-70 | 100 | 95 | 93 | 88 | 84 | 81 | 77 | 73 | 70 | 67 | 63 | 60 | 57 | 54 | 45 | 36 | 27 | 18 | 9 | 0 |
| 71-79 | 100 | 95 | 90 | 86 | 81 | 77 | 73 | 69 | 66 | 63 | 60 | 57 | 54 | 52 | 43 | 35 | 26 | 18 | 9 | 0 |
| 80-85 | 100 | 94 | 98 | 85 | 81 | 77 | 73 | 68 | 62 | 55 | 47 | 39 | 31 | 25 | 22 | 19 | 15 | 12 | 9 | 0 |

Elhouty000007

Table of Guaranteed Values

| End of Year | Annual Planned Premium | Policy Value | Surrender Value | Death Benefit |
|---|---|---|---|---|
| 1 | 125,896 | 0 | 0 | 2,000,000 |
| 2 | 125,896 | 0 | 0 | 2,000,000 |
| 3 | 125,896 | 0 | 0 | 2,000,000 |
| 4 | 125,896 | 0 | 0 | 2,000,000 |
| 5 | 125,896 | 0 | 0 | 2,000,000 |
| 6 | 125,896 | 0 | 0 | 2,000,000 |
| 7 | 125,896 | 0 | 0 | 2,000,000 |
| 8 | 125,896 | 0 | 0 | 2,000,000 |
| 9 | 125,896 | 0 | 0 | 2,000,000 |
| 10 | 125,896 | 0 | 0 | 2,000,000 |
| 11 | 125,896 | 0 | 0 | 2,000,000 |
| 12 | 125,896 | 0 | 0 | 2,000,000 |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| Age 100 | | | | |

The values above are calculated assuming payment of Annual Planned Premiums (as shown above), the benefits shown on page 3 at time of issue, the guaranteed cost of insurance, the maximum charges for these benefits and the minimum guaranteed interest rate.

In any policy year in which the guaranteed death benefit is shown above and the surrender value indicates zero, the policy is in force as provided by the Coverage Protection Rider. See Coverage Protection Rider for details.

Note: Based on annual planned premiums, minimum guaranteed interest rate and guaranteed cost of insurance, the policy will expire without value on 09/23/2018.

**Coverage has expired without value.

Elhouty000008

## Guaranteed Maximum Monthly Cost of Insurance

| Policy Year | Rate Per $1000 | Policy Year | Rate Per $1000 |
|---|---|---|---|
| 1 | 9.79133 | | |
| 2 | 10.80467 | | |
| 3 | 11.86392 | | |
| 4 | 12.97542 | | |
| 5 | 14.17400 | | |
| 6 | 15.49767 | | |
| 7 | 16.98125 | | |
| 8 | 18.65483 | | |
| 9 | 20.51050 | | |
| 10 | 22.51183 | | |
| 11 | 24.61292 | | |
| 12 | 26.78683 | | |
| 13 | 29.00033 | | |
| 14 | 31.24392 | | |
| 15 | 33.54925 | | |
| 16 | 35.94958 | | |
| 17 | 38.50033 | | |
| 18 | 41.29650 | | |
| 19 | 44.61042 | | |
| 20 | 49.05642 | | |
| 21 | 55.71117 | | |
| 22 | 66.65675 | | |
| 23 | 83.33333 | | |
| 24 | 83.33333 | | |
| 25 | 83.33333 | | |

Elhouty000009

## Coverage Protection Rider
### Coverage Protection Account (CPA) Rates and Charges

**CPA Expense Charges:**

| | |
|---|---|
| CPA Premium Expense Charge | 28.00% |
| Monthly CPA Policy Fee | $5.00 |

**Annual CPA Interest Crediting Rates:**

| | |
|---|---|
| CPA Base Interest Rate | 5.50% |
| CPA Bonus Interest Rate | 9.15% |
| CPA Tier Interest Rate | 4.77% |
| CPA Interest on Loaned Values Rate | 4.00% |
| CPA Tiered Threshold Per $1000 of Face Amount | $45.94 |

**CPA Reduction Factors (Per $1000 of Initial Face Amount):**

| Policy Year | Reduction Factor | Policy Year | Reduction Factor | Policy Year | Reduction Factor |
|---|---|---|---|---|---|
| 1 | 0.00 | 6 | 94.83 | 11 | 116.95 |
| 2 | 18.96 | 7 | 110.63 | 12 | 113.79 |
| 3 | 39.51 | 8 | 113.79 | 13 | 110.63 |
| 4 | 56.89 | 9 | 116.95 | 14 | 110.63 |
| 5 | 79.02 | 10 | 120.11 | 15 | 110.63 |

Elhouty000010

## Coverage Protection Rider
## Guaranteed Monthly Cost of Insurance

| Policy Year | Rate Per $1000 | Policy Year | Rate Per $1000 |
|---|---|---|---|
| 01 | 1.81129 | | |
| 02 | 2.03304 | | |
| 03 | 2.36138 | | |
| 04 | 2.81749 | | |
| 05 | 3.07762 | | |
| 06 | 3.64547 | | |
| 07 | 4.30215 | | |
| 08 | 4.72560 | | |
| 09 | 5.19604 | | |
| 10 | 5.70315 | | |
| 11 | 8.90741 | | |
| 12 | 9.69416 | | |
| 13 | 10.49522 | | |
| 14 | 11.30719 | | |
| 15 | 12.14148 | | |
| 16 | 13.01016 | | |
| 17 | 13.93327 | | |
| 18 | 14.94521 | | |
| 19 | 16.14451 | | |
| 20 | 17.75352 | | |
| 21 | 20.16187 | | |
| 22 | 24.12308 | | |
| 23 | 30.99975 | | |
| 24 | 42.69771 | | |
| 25 | 57.30083 | | |

UI. 0400

Elhouty000011

## Definitions

When these words are used in this policy, they have the meaning stated:

**Application** - The application which was signed by you requesting this policy.

**Company (we, us, our)** - Lincoln Benefit Life Company.

**Face Amount** - The initial death benefit, shown on the Policy Data pages, adjusted for any changes in accordance with the terms of this policy.

**In Force** - The coverage provided by this policy is in effect.

**Increase Age** - The age of the insured as of the effective date of an increase in face amount, determined by the insured's last birthday.

**Increase Year** - A twelve month period beginning on the effective date of an increase in face amount.

**Insured** - The person upon whose life is covered by this policy as shown on the Policy Data pages.

**Issue Age** - The age of the insured at the time this policy was issued (issue date) determined by this insured's last birthday.

**Issue Date** - The date the policy is issued, as shown on the Policy Data pages. It is used to determine policy years and policy months in the policy.

**Minimum Initial Payment** - The minimum premium which must be paid to issue the policy.

**Monthly-Automatic Payment** - A method of making payments each month automatically; for example, by bank draft or salary deduction.

**Monthly Activity Day** - The day of the month on which deductions are made. This date is shown on the Policy Data pages. If a month does not have that day, the deduction will be made on the last day of that month.

**Net Premium** - The premium paid less the premium expense charge.

**Net Surrender Value** - The amount you would receive upon surrender of this policy, equal to the surrender value less any policy debt.

**Payment Class** - The class into which the insured is placed, determined by our guidelines for providing insurance coverage.

**Policy Anniversary** - The same day and month as your issue date for each subsequent year your policy remains in force.

**Policy Data** - The pages of this policy which identify specific information about the insured and the benefits.

**Policy Debt** - The sum of all unpaid policy loans and accrued interest.

**Policy Month** - A one month period beginning on the same day of the month as the issue date of the policy.

**Policy Year** - A twelve month period beginning on a policy anniversary.

**Rider** - An additional benefit we are providing.

*UL 0400*

*Page 7*

Elhouty000012

Surrender Value - The policy value less any applicable surrender charges.

You - The person(s) having the rights of ownership defined in the policy.

## Death Benefit

If the insured dies while this policy is in force, we will pay the death benefit when we have received due proof of death, subject to the terms and conditions of this policy. The death benefit will be reduced by any outstanding policy debt.

### Death Benefit Option

While the insured is alive you may choose between two death benefit options:

If you select Option 1, the death benefit will be the greater of:

    a.   The face amount on the date of death; or

    b.   The percentage of the policy value shown in the Compliance with Federal Laws Provision.

If you select Option 2, the death benefit will be the greater of:

    a.   The face amount plus the policy value on the date of death; or

    b.   The percentage of the policy value shown in the Compliance with Federal Laws Provision.

The initial death benefit option selected by you is stated in the application. If no death benefit option is selected at the time of application, the death benefit option will be Option 1.

### Change of Death Benefit Option

At any time after the first policy year, you may request to change the death benefit option by writing to us. If you ask to change from Option 2 to Option 1, the face amount will be increased by the amount of the policy value. If you ask to change from Option 1 to Option 2, the face amount will be decreased by the amount of the policy value.

The change will take effect on the monthly activity day after the date we receive the written request. We will provide to you an endorsement showing the actual start date of the death benefit option change and the new face amount. We reserve the right to limit the frequency of the death benefit option changes made under this policy.

If this policy is in force on the policy anniversary following the insured's 100th birthday and Option 2 has been selected, the death benefit option will change to Option 1.

### Change of Face Amount

At any time after the first policy year, you may request either of the following changes by writing us. The change will take effect on the monthly activity day after the date we approve the request:

1.   Increasing the face amount. You must submit a new application for an increase in face amount. We will require due proof that the insured is still insurable. An increase will take effect on the monthly activity day after the date we approve the increase. We reserve the right to limit the amount of any increases made under this policy. The minimum increase amount is $10,000. An increase is not allowed after the maximum issue age. The face amount may not be increased more than once in any 12 month period.

Elhouty000013

2.  Decreasing the face amount. A decrease will take effect on the monthly activity day after the date we approve the request. A decrease in face amount will first be applied against the most recent increase successively, and finally to the initial face amount. The face amount in effect after any decrease must be at least $100,000 for attained ages 18-60, and $50,000 for all other attained ages.

## Beneficiary

Subject to the terms and conditions of this policy, the beneficiary will receive the death benefit when the insured dies and we have received due proof of death. The beneficiary is as stated in the application unless changed.

The two classes of beneficiaries are primary beneficiaries and contingent beneficiaries. Primary and contingent beneficiaries are individually and collectively referred to in this policy as "beneficiaries." The beneficiaries will receive the death benefit in the following order:

1.  Primary beneficiary

2.  Contingent beneficiary.

The primary beneficiary is the beneficiary(ies) who is first entitled to receive benefits under this policy upon the death of the insured. In order to receive the death benefit, the beneficiary must be living on the earlier of:

1.  The day we receive due proof of the insured's death, or

2.  The 15th day past the insured's death.

If the beneficiary does not survive the insured in accordance with these requirements, we will pay the death benefit as if the beneficiary were not living when the insured dies. If none of the named beneficiaries are living when the insured dies, the death benefit will be paid to you, if living, otherwise to your estate.

We will pay the death benefit to the beneficiaries according to the most recent written instruction we have accepted from you. We will pay the death benefit in equal shares to the named beneficiaries in the same class who are to share the funds if we do not receive any written instructions. If there is more than one beneficiary in a class and one of the beneficiaries predeceases the insured, the death benefit will be paid in equal shares to the surviving beneficiaries in that class.

You may change or add beneficiaries during the insured's lifetime by written request in a form satisfactory to us, unless you have designated an irrevocable beneficiary. You must file the request with us. Upon acceptance, the change will take effect on the date you signed the request, subject to any action we have taken before we accepted the change.

If you name one or more irrevocable beneficiaries, no change in the beneficiaries and no changes which affect policy values may be made without their consent. Inadvertent acceptance by us of beneficiary changes not consented to by the irrevocable beneficiaries shall not change the irrevocable beneficiaries.

No beneficiary has any rights in this policy until the insured dies.

## Ownership

The insured is the owner if no other person is named in the application as owner. The owner controls the policy during the lifetime of the insured. Unless you provide otherwise, as owner, you may exercise all rights granted by the policy without the consent of anyone else. If the last named owner dies before the insured, then the contingent owner named in the application is the new owner. If no owner named in this policy is living, then the owner will be the estate of the last named owner.

*UL 0400*

*Page 9*

Elhouty000014

You may name a new owner by written request in a form satisfactory to us. We may establish a limit on the maximum number of owners. You must file the request with us. Upon acceptance, it is effective as of the date you signed the request, subject to any action we have taken before we accepted it.

### Assignment

You may assign this policy or an interest in it to another. You must do so in writing and file the assignment with us. No assignment is binding on us until we accept it. When we accept it, your rights and those of the beneficiary will be subject to the assignment. We are not responsible for the validity of any assignment you make.

## Premium Payment

### Payments

Premiums for this policy are referred to as payments. The planned payment and minimum initial payment are shown on the Policy Data pages.

Payments are flexible. This means you may change the amount of planned payments and the time between payments.

We must have received the first payment on or before the issue date. This policy will not be in effect before this amount is received and all underwriting requirements have been completed.

We will send you a reminder notice if you pay annually, semi-annually or quarterly. You may also make a monthly-automatic payment.

Payments are payable to our office or to one of our authorized representatives. The amount you pay will affect the policy value. If you pay too little, the policy will lapse subject to the grace period.

### Grace Period

If on any monthly activity day the net surrender value is less than the monthly deduction for the current policy month, you will be given a grace period of 61 days. This policy will be in force during the grace period. If you do not make sufficient payment by the end of the grace period, the policy will lapse. If the insured dies during the grace period, we will deduct any due and unpaid monthly deductions and policy debt owed from the death benefit.

We will send a written notice to the most recent address we have for you at least 30 days prior to the day coverage lapses.

### Reinstatement

If this policy terminates prior to the death of the insured and if this policy has not been surrendered, this policy may be reinstated provided you:

1.  Make your request within five years of the date the policy entered the grace period;

2.  Give us the proof we require that the insured is still insurable in the same payment class that the policy was issued;

UL 0400

Page 10

Elhouty000015

3.   Make a payment sufficient to cover the unpaid monthly deductions for the grace period, and to keep the policy in force for three policy months from the date of reinstatement; and

4.   Pay or ask us to reinstate any policy debt as described in the Loan Interest provision.

The policy value on the reinstatement date will reflect the policy value at the time of termination and premiums applied at the time of reinstatement. The policy debt on the reinstatement date will equal the policy debt at the time of termination. Surrender charges will continue to be based on the original policy date.

The effective date of reinstatement will be the date we approve the request for reinstatement. When this policy is reinstated, a new two year contestable period will apply with respect to statements made in the application for reinstatement. The contestable period is explained in the Incontestability provision of this policy.

## Policy Value

The policy value is an accumulation with interest of premiums paid less charges and withdrawals. Interest is credited to the policy value daily. Charges, other than the premium expense charge, are deducted on monthly activity days.

The issue date is the first monthly activity day. The policy value on the issue date is equal to the net premium received on that date. On each monthly activity day after the issue date, the policy value is:

1.   The policy value as of the prior monthly activity day, minus

2.   The monthly deduction for the prior policy month, plus

3.   One month's interest on item 1 minus item 2 above, plus

4.   Net premiums received since the prior monthly activity day with interest, minus

5.   Partial withdrawals taken since the prior monthly activity day with interest.

On any other day after issue that is not a monthly activity day, the policy value is a daily accumulation with interest of the prior monthly activity day's policy value, less the monthly deduction for the current month, plus net premiums, less withdrawals.

### Interest Rate

Interest is credited daily. The guaranteed minimum interest rate used to compute policy values is shown on the Policy Data pages. The guaranteed minimum interest rate is an effective annual rate compounded daily. We may credit an interest rate greater than the minimums stated. During policy years 15 and later, in any period in which the current interest rate exceeds the guaranteed minimum interest rate, the policy will receive an additional 0.30% annual interest.

### Premium Expense Charge

Upon receipt of each payment, we will deduct a premium expense charge. This charge, shown on the Policy Data pages, is a percentage of the premium received.

### Administrative Expense Charge

The monthly administrative expense charge is equal to the administrative expense charge rate shown on the Policy Data pages for the appropriate policy year, times the initial face amount, divided by 1000. The applicable charge varies by issue age, sex and payment class of the insured.

UL 0400                                                                                          Page 11

Elhouty000016

A monthly administrative expense charge will also be assessed for each increase in face amount for the first six policy years following the effective date of each increase. The applicable charge is equal to the amount of increase times a rate, that varies based on the attained age, sex and payment class of the insured, divided by 1000. The applicable charge will be stated on the endorsement sent to you if your policy's face amount is increased.

## Monthly Deductions

The monthly deduction is the sum of:

1. A monthly policy fee, not to exceed the maximum monthly policy fee shown on the Policy Data pages;

2. The monthly administrative expense charge;

3. The monthly cost of insurance for the policy; and

4. The monthly cost of any riders attached to the policy.

The monthly deduction is zero on and following the policy anniversary following the insured's attained age 100.

## Cost of Insurance

The cost of insurance is determined as follows:

1. Divide the death benefit as of the prior monthly activity day by 1.0032737.

2. Subtract the policy value as of the prior monthly activity day.

3. Multiply the result by the current cost of insurance rate divided by 1000. The cost of insurance rate is based on the insured's sex, issue age, policy year, payment class and face amount. The rates will be determined by us, but they will never be more than the guaranteed maximum rates shown on the Policy Data pages.

The cost of insurance charge is zero on and following the policy anniversary following the insured's attained age 100.

# Surrender Value

The net surrender value of this policy is the amount we will pay you if you ask us to terminate this policy. It is equal to the policy value less the surrender charge less any policy debt. If the surrender charge is greater than the policy value, the surrender value is zero. We may defer the payment of the net surrender value for up to six months after your request.

## Surrender Charge

The maximum surrender charges we will assess, based on the face amount at issue, are shown in the Surrender Charge Schedule on the Policy Data pages. An additional surrender charge will apply to an elective increase in face amount. From the effective date of the increase, the new additional surrender charge will continue for nineteen years or to the anniversary following the insured's 100th birthday, if sooner. The initial surrender charge on an increase is an amount per thousand of increase which varies by sex, increase payment class, and increase age, as shown in the tables on the Policy Data pages as:

1. The Surrender Charge Factor, times

2. The increase in face amount divided by 1,000, times

3. The Surrender Charge Percentage.

Elhouty000017

### Continuation of Coverage

If you stop making payments, this policy and any riders will remain in effect as long as the net surrender value covers the monthly deductions. This provision does not continue any riders beyond their scheduled termination dates.

### Partial Withdrawal

You may request a partial withdrawal of your net surrender value by writing to us. Partial withdrawals are not allowed after the policy anniversary following the insured's attained age 100. The partial withdrawal service fee, as shown on the Policy Data pages, will be assessed on each partial withdrawal.

The policy value will be reduced by the amount of any partial withdrawal and the partial withdrawal service fee. If your policy has Death Benefit Option 1, the face amount will also be reduced by the amount of any partial withdrawal. The minimum partial withdrawal amount is $250 and the maximum partial withdrawal amount may not reduce the net surrender value below $500.

We may defer the payment of any partial withdrawal for up to six months after your request. We will continue to credit interest during this time.

### Basis of Values

Minimum surrender values are based on the 1980 CSO Mortality Table, age last birthday, male or female, smoker or nonsmoker, as applicable. The minimums are not less than those required by the state in which the application is signed. The surrender value at all times reflects the payments which you have made and the time elapsed in the policy year.

## Loans

You may have a loan if you assign this policy to us as sole security. Policy debt on this policy has priority over the claims of any other person. The minimum loan amount is $250. Any new loan that you request, when added to any outstanding policy debt, may not decrease the net surrender value to an amount less than $500.

If your policy debt exceeds the surrender value, this policy will terminate except as provided in the Grace Period provision. We must mail a notice to you at least 30 days before the policy terminates.

We reserve the right to defer the payment of any loan for six months after your request, unless the loan is to pay a premium to us.

### Loan Interest

The annual loan interest rate is shown on the Policy Data pages. Interest on policy loans accrues daily and is due at the end of each policy year. Any interest not paid when due becomes part of the policy loan and will bear interest at the rates described in this provision. The amount of the policy value equal to the policy loan will be credited interest at the annual rate shown on the Policy Data pages, regardless of the rate credited to the unloaned policy value.

### Loan Repayment

As long as the policy remains in force, the policy debt may be repaid in whole or in part without penalty at any time while the insured is living. If you do not repay the policy debt, we will deduct the policy debt from the amounts we pay pursuant to the terms of this policy.

UL 0400

Elhouty000018

# Other Terms of Your Policy

### Our Contract With You

This policy, including any endorsements and riders, and the signed application are your entire contract with us. We issued it based upon your application and the payment made by you. A copy of the application is included.

We will not use any statements, except those made in the application to challenge any claim or to avoid any liability under this policy. The statements made in the application will be treated as representations and not as warranties.

Only our officers have authority to change this policy. No agent may do this. Any change must be written.

### When Protection Starts

The issue date is the date when this policy becomes effective if the insured is then living, all underwriting requirements have been completed, and the first payment has been made.

### Termination

This policy will terminate upon the earliest of the following events:

1.   Surrender of the policy; or

2.   End of the grace period; or

3.   Death of the insured.

### Misstatement of Age or Sex

If the insured's age or sex shown on the application has been misstated, we will adjust the death benefit to the amount which the most recent cost of insurance charge made would have purchased at the correct age and sex.

### Incontestability

We will not contest this policy after it has been inforce during the lifetime of the insured for two years from the issue date unless one of the following exceptions occurs:

1.   Any increase in face amount: This contestable period with respect to the increase amount will be measured during the lifetime of the insured for two years from the effective date of the increase.

2.   Reinstatement of this policy or any riders: This contestable period will be measured during the lifetime of the insured for two years from the reinstatement date.

3.   An attached rider has a separate incontestability provision. This contestable period will be measured in accordance with the incontestability provision provided in the rider.

We may contest this policy at any time for the failure to make sufficient payments to cover the monthly deductions required to keep this policy and its riders in force.

Elhouty000019

### Suicide or Self-Destruction

If the insured dies by suicide while sane or by self-destruction while insane within two years from the issue date of the policy:

1.  We will only pay an amount equal to the payments made less any policy debt, and

2.  The policy will terminate.

If the insured dies by suicide while sane or by self-destruction while insane within two years of the effective date of any increase in face amount, our liability with respect to the increase will be limited to the cost of insurance for the increase.

### Annual Report

Each year we will send you an annual report following the policy anniversary. Each report will provide information on various transactions that took place during the policy year just completed, as well as information on the current status of the policy. This information will include items such as:

1.  The policy value as of the end of the current and prior year.

2.  Payments and withdrawals made during the year.

3.  The monthly deductions and expense charges made during the year.

4.  Interest credited to the policy value during the year.

5.  The current death benefit.

6.  The current surrender charges and surrender value.

7.  The amount of policy debt.

8.  The current rate of interest.

### Policy Projections

You may request an additional policy projection of values report at any time during the policy year. We may charge you for this extra report, not to exceed $25. We will inform you of the current charge before sending the report.

### Conformity With State Law

This policy is subject to the laws of the state where the application was signed. If any part of the policy does not comply with the law, it will be treated by us as if it did.

### Nonparticipating

This policy does not share in our profits or surplus earnings. We will pay no dividends on this policy.

### Compliance With Federal Laws

The two requirements below are intended to maintain the status of this policy as life insurance under the current Internal Revenue Code:

Elhouty000020

First, the amount of payments that you may pay is limited by law. We will conduct a test no less frequently than annually, and return any excess payments, with interest, within 60 days of the end of the policy year in which the excess payments were paid.

Second, the death benefit payable may not be less than the applicable percentage of your policy value. This percentage is based on the attained age as shown in the table below:

| Attained Age | Applicable Percentage | Attained Age | Applicable Percentage |
|---|---|---|---|
| 0 to 40 | 250 | 61 | 128 |
| 41 | 243 | 62 | 126 |
| 42 | 236 | 63 | 124 |
| 43 | 229 | 64 | 122 |
| 44 | 222 | 65 | 120 |
| 45 | 215 | 66 | 119 |
| 46 | 209 | 67 | 118 |
| 47 | 203 | 68 | 117 |
| 48 | 197 | 69 | 116 |
| 49 | 191 | 70 | 115 |
| 50 | 185 | 71 | 113 |
| 51 | 178 | 72 | 111 |
| 52 | 171 | 73 | 109 |
| 53 | 164 | 74 | 107 |
| 54 | 157 | 75 to 90 | 105 |
| 55 | 150 | 91 | 104 |
| 56 | 146 | 92 | 103 |
| 57 | 142 | 93 | 102 |
| 58 | 138 | 94 to 99 | 101 |
| 59 | 134 | 100 and above | 100 |
| 60 | 130 | | |

We will conduct a test monthly and increase the death benefit, subject to our then current underwriting limits, to be equal to the applicable percentage of your policy value, if necessary. The death benefit will remain at that level unless it has to be increased again. If we cannot increase the death benefit due to underwriting limits, we will return that amount of payments necessary so that the death benefit will be equal to the applicable percentage of your policy value after returning the amount.

If it is necessary for us to return payments to you under the preceding paragraph, we will return them within 60 days of the end of the policy year in which they were paid.

We reserve the right to amend the policy to comply with:

1. Requirements of the Internal Revenue Code;

2. Any regulations or rulings issued under the Internal Revenue Code; and

3. Any other requirements imposed by the Internal Revenue Service.

We will give you a copy of any such amendment.

Elhouty000021

## Settlement

The net death benefit, or the net surrender value in the event you withdraw it, will be paid in one sum or applied to any settlement option we then provide. The one sum payment may be paid by a single payment or to a Secure Access account. When we pay the proceeds, we may ask that this policy be returned to us. No surrenders or partial withdrawals are permitted after payments under a settlement option have started.

Settlement options will include:

1.  We will pay a selected monthly income until the proceeds, with interest, are exhausted.

2.  We will pay a monthly income, based upon the amount of proceeds, interest rate and the age and sex of the person or persons receiving the funds, for a selected period or the lifetime of the person or persons to whom the funds are being paid.

We guarantee that the rate of interest will not be less than 3%. We may pay interest in excess of the guaranteed rate. We will issue a supplementary contract setting forth the benefits to be paid and the rights of the beneficiary. Each election must include at least $5,000.00 of policy proceeds and must result in installment payments of not less than $50.00.

The following table shows the guaranteed monthly payment per $1,000.00 of policy proceeds over the fixed number of years shown.

| No. of Years | Monthly Payment | No. of Years | Monthly Payment |
|---|---|---|---|
| 1 | $84.47 | 11 | $8.86 |
| 2 | 42.86 | 12 | 8.24 |
| 3 | 28.99 | 13 | 7.71 |
| 4 | 22.06 | 14 | 7.26 |
| 5 | 17.91 | 15 | 6.87 |
| 6 | 15.14 | 16 | 6.53 |
| 7 | 13.16 | 17 | 6.23 |
| 8 | 11.68 | 18 | 5.96 |
| 9 | 10.53 | 19 | 5.73 |
| 10 | 9.61 | 20 | 5.51 |

The following are selected guaranteed lifetime monthly income amounts per $1,000.00 with payments guaranteed for at least 10, 15 and 20 years.

Elhouty000022

| Age Last Birthday When Benefit Begins | Monthly Installment | | | | | |
|---|---|---|---|---|---|---|
| | 10 Year Certain | | 15 Year Certain | | 20 Year Certain | |
| | Male | Female | Male | Female | Male | Female |
| 55 | 4.41 | 4.13 | 4.34 | 4.09 | 4.24 | 4.03 |
| 56 | 4.50 | 4.20 | 4.42 | 4.16 | 4.30 | 4.09 |
| 57 | 4.58 | 4.28 | 4.50 | 4.23 | 4.36 | 4.15 |
| 58 | 4.68 | 4.36 | 4.58 | 4.30 | 4.43 | 4.22 |
| 59 | 4.78 | 4.45 | 4.66 | 4.38 | 4.49 | 4.29 |
| 60 | 4.88 | 4.54 | 4.75 | 4.46 | 4.56 | 4.35 |
| 61 | 4.99 | 4.63 | 4.84 | 4.55 | 4.62 | 4.42 |
| 62 | 5.11 | 4.73 | 4.93 | 4.64 | 4.69 | 4.49 |
| 63 | 5.23 | 4.84 | 5.03 | 4.73 | 4.75 | 4.57 |
| 64 | 5.35 | 4.95 | 5.13 | 4.83 | 4.82 | 4.64 |
| 65 | 5.49 | 5.07 | 5.23 | 4.93 | 4.88 | 4.71 |
| 66 | 5.62 | 5.20 | 5.33 | 5.03 | 4.94 | 4.78 |
| 67 | 5.77 | 5.33 | 5.43 | 5.14 | 5.00 | 4.85 |
| 68 | 5.92 | 5.47 | 5.53 | 5.25 | 5.06 | 4.92 |
| 69 | 6.07 | 5.62 | 5.63 | 5.36 | 5.11 | 4.99 |
| 70 | 6.23 | 5.78 | 5.73 | 5.47 | 5.16 | 5.05 |
| 71 | 6.39 | 5.94 | 5.83 | 5.58 | 5.21 | 5.11 |
| 72 | 6.56 | 6.11 | 5.93 | 5.70 | 5.25 | 5.17 |
| 73 | 6.73 | 6.29 | 6.02 | 5.81 | 5.29 | 5.22 |
| 74 | 6.90 | 6.48 | 6.11 | 5.92 | 5.33 | 5.27 |
| 75 | 7.08 | 6.67 | 6.20 | 6.03 | 5.36 | 5.31 |
| 76 | 7.26 | 6.86 | 6.28 | 6.13 | 5.39 | 5.35 |
| 77 | 7.43 | 7.06 | 6.36 | 6.22 | 5.41 | 5.38 |
| 78 | 7.61 | 7.26 | 6.43 | 6.31 | 5.43 | 5.40 |
| 79 | 7.78 | 7.46 | 6.49 | 6.40 | 5.45 | 5.43 |
| 80 | 7.95 | 7.66 | 6.55 | 6.47 | 5.46 | 5.45 |
| 81 | 8.11 | 7.86 | 6.60 | 6.54 | 5.47 | 5.46 |
| 82 | 8.27 | 8.05 | 6.65 | 6.59 | 5.48 | 5.48 |
| 83 | 8.42 | 8.23 | 6.69 | 6.64 | 5.49 | 5.49 |
| 84 | 8.56 | 8.40 | 6.72 | 6.69 | 5.50 | 5.49 |
| 85 or older | 8.69 | 8.55 | 6.75 | 6.73 | 5.50 | 5.50 |

Elhouty000023

# LINCOLN BENEFIT LIFE COMPANY

## Coverage Protection Rider

### General

This rider is made a part of the policy on the policy issue date. This rider is subject to all terms and conditions of the policy, except as provided in this rider.

### Benefit

This policy will not lapse as long as the net coverage protection account value, less policy debt, is greater than zero, even if the net surrender value, less policy debt, under the policy is less than the monthly deduction for the current policy month.

The policy will enter the grace period as described in the policy if the net coverage protection account value, less policy debt, is not greater than zero and the net surrender value, less policy debt, under the policy is less than the monthly deduction for the current policy month.

### Coverage Protection Account (CPA) Value

The CPA value is a reference value for determining whether the benefit provided by this rider is in effect. The CPA value does not represent an amount available to you and has no impact on the policy value or surrender value of your policy. All interest rates and charges used to determine CPA values are determined on the issue date and are not subject to change on the initial death benefit.

The CPA value on the issue date is equal to the payments received minus the CPA premium expense charge and minus the CPA monthly deduction for the first policy month. The CPA premium expense charge is shown on the Policy Data pages.

On any monthly activity day after the issue date, the CPA value is:

1.  The CPA value on the prior monthly activity day, plus

2.  Interest on item 1 above, calculated using the interest rates shown on the Policy Data pages, plus

3.  Premiums received since the prior monthly activity day, less the CPA premium expense charge, minus

4.  Partial withdrawals taken since the prior monthly activity day, minus

5.  The CPA monthly deduction for the current month.

### CPA Monthly Deduction

The CPA monthly deduction is the sum of:

1.  A monthly CPA policy fee shown on the Policy Data pages;

2.  The monthly CPA cost of insurance; and

3.  The monthly CPA cost of riders.

Elhouty000024

### Monthly CPA Cost of Insurance

The monthly CPA cost of insurance is determined as follows.

1. Divide the CPA death benefit as of the monthly activity day by 1.0032737.

2. Subtract the CPA value as of the monthly activity day, prior to the CPA monthly deduction.

3. Multiply the result of item 1 and item 2 above, or zero if greater, by the monthly CPA cost of insurance rate, divided by 1000.

The monthly CPA cost of insurance rate is based on the insured's sex, issue age, policy year, payment class and face amount. These rates are shown on the Policy Data pages. A new set of CPA cost of insurance rates will apply to any future increases in face amount under the policy.

### CPA Death Benefit

If the death benefit option, as described in the Death Benefit provision of the policy, is currently Option 1, the CPA death benefit is equal to the greater of:

1. The current face amount of the policy, and

2. The CPA value on the monthly activity day, prior to the CPA monthly deduction.

If the death benefit option is currently Option 2, the CPA death benefit is equal to the face amount of the policy plus the CPA value on the monthly activity day, prior to the CPA monthly deduction.

The CPA death benefit is a reference value only. It does not change the amount payable upon the death of the insured.

### Interest Credited on CPA

The interest rate applied to unloaned CPA values will be as follows:

The CPA base interest rate shown on the Policy Data pages will apply in policy years 1 through 9.

Beginning in policy year 10, the CPA bonus interest rate shown on the Policy Data pages will apply to all or a portion of the unloaned CPA value. In the interest calculation each month, the CPA value will be grouped into one of two tiers. Unloaned CPA values below the CPA tier threshold will receive the CPA bonus interest rate. Unloaned CPA values in excess of the CPA tier threshold will receive the CPA tier interest rate shown on the Policy Data pages.

The CPA tier threshold in any period will equal:

1. The CPA tier threshold per $1000 of face amount shown on the Policy Data pages,

2. Multiplied by the face amount divided by 1000, and

3. Multiplied by the policy year.

Beginning on the earlier of policy year 25 or the policy anniversary following attained age 91, all unloaned CPA values will be credited with the CPA bonus interest rate.

In all policy years, loaned values will be credited with the CPA interest on loaned values rate shown on the Policy Data pages.

Elhouty000025

### Net CPA Value

The net CPA value on any monthly activity day will equal the CPA value minus the CPA reduction amount for the current policy year, if any. The CPA reduction amount is equal to the CPA reduction factor shown on the Policy Data pages for the appropriate policy year, multiplied by the initial face amount, divided by 1000.

If the net CPA value, less policy debt, is not greater than zero and the net surrender value, less policy debt, under the policy is less than the monthly deduction for the current policy month, the policy will enter the grace period as described in the policy.

### Termination

This rider will terminate when the policy is terminated. If the policy terminates according to the terms of the Grace Period provision of the policy, this rider may be reinstated at the time the policy is reinstated, subject to conditions in the Reinstatement provision of the policy. The CPA value at the time of reinstatement will reflect the CPA value at the time of termination and premiums applied at the time of reinstatement. Any unpaid CPA charges that were incurred during the grace period will be deducted from the CPA value.

### Coverage After Age 100

If the net CPA value on the policy anniversary following attained age 100, less policy debt, is greater than zero, the death benefit provided by the policy is guaranteed to remain in effect for the remainder of the insured's lifetime, as long as the death benefit exceeds the policy debt. The amount payable upon death will be reduced by any outstanding policy debt.

B. Eugene Wraith
President

Elhouty000026

# LINCOLN BENEFIT LIFE COMPANY

## AMENDATORY ENDORSEMENT

The following is hereby added to the Surrender Value/Cash Value provision of the policy:

"Any request for cancellation or surrender of this policy is effective on the date the request is received if the request is made in writing to us, or to an agent of our company. The request must contain at a minimum, all of the following:

1. An unequivocal request for cancellation or surrender.
2. The policy number of the policy to be cancelled or surrendered.
3. The name of the insured on the policy to be cancelled or surrendered.
4. The signature of the owner of the policy and the signature of any collateral assignee, irrevocable beneficiary, or other person having an interest in the policy through the legally binding document.
5. Either the policy itself, or, in lieu of the policy, a statement that the policy itself has been lost or destroyed."

B. Eugene Wraith
President

*SA-8243*

Elhouty000027

**CONFIDENTIAL**

01N1288753

# LINCOLN BENEFIT LIFE COMPANY
A Member of Allstate Financial Group
P.O. Box 80469, Lincoln, Nebraska 68501
PART 1 - APPLICATION FOR LIFE INSURANCE

### Section A   PRIMARY PROPOSED INSURED

1. Name (First, Middle, Last)   **SALIM FRIWAT**   Birthdate (M/D/Y) REDACTED   Height and Weight REDACTED

Age — Sex **M**   Birth State **ISRAEL**   Marital Status **M**   Driver's License #/State REDACTED   **CA**   Social Security No. REDACTED

Home Address **14103 CALLE DE VISTA**   City **VALLEY CENTER**   State **CA**   Zip **92082**   How Long **54 C4**

2. Employer Name **RETIRED**   Home Phone   Work Phone

Employer Address   City REDACTED   State — Zip — How Long?

Occupation and Job Duties **RETIRED**   Annual Income $ **3,000,000**

3. Tobacco or nicotine products currently used.   ☒ None   ☐ Cigarettes Packs/day___   ☐ Other___

Used in past 3 years other than above?   ☒ No   ☐ Yes-Type?___   When Quit?___

4. (a) Primary Beneficiary(ies)** **JOSEF FRIWAT** REDACTED   Address **14103 CALLE DE VISTA**

Relationship **SON**   Age   SSN/Tax ID #   City **VALLEY CENTER**   State **CA**   Zip **92082**

(b) Contingent Beneficiary(ies)** **ELIAS FRIWAT** REDACTED   Address **14103 CALLE DE VISTA**

Relationship **SON**   Age   SSN/Tax ID #   City **VALLEY CENTER**   State **CA**   Zip **92082**

**Surviving beneficiaries in the same class (primary or contingent) share equally unless otherwise stated.

### Section B – ADDITIONAL OR JOINT INSURED   (If more than one, submit additional copies of Section B.)

1. Name (First, Middle, Last)   Birthdate (M/D/Y)   Height and Weight Ft. In. Lbs.

Age — Sex   Birth State   Marital Status   Driver's License #/State   Social Security No.

Home Address   City   State Zip How Long?

2. Employer Name   Home Phone   Work Phone

Employer Address   City   State Zip How Long?

Occupation and Job Duties   Annual Income $

3. Tobacco or nicotine products currently used.   ☒ None   ☐ Cigarettes Packs/day___   ☐ Other___

Used in past 3 years other than above?   ☒ No   ☐ Yes-Type?___   When Quit?___

4. (a) Primary Beneficiary(ies)**   Address

Relationship   Age   SSN/Tax ID #   City   State   Zip

(b) Contingent Beneficiary(ies)**   Address

Relationship   Age   SSN/Tax ID #   City   State   Zip

**Surviving beneficiaries in the same class (primary or contingent) share equally unless otherwise stated.

LA 2000-CA   Page 1

7/6/06 4:27:11 PM

Elhouty000028

**CONFIDENTIAL**

## Section C – CHILDREN PROPOSED FOR COVERAGE UNDER CPR
### (Must be insured's children, adopted children, or stepchildren age 17 or less)

| 1. Name (First, Middle, Last) | Birthdate (M/D/Y) | Age | Sex |
|---|---|---|---|
| | / / | | |
| | / / | | |
| | / / | | |
| | / / | | |

## Section D – OWNER IF OTHER THAN THE FIRST NAMED INSURED

| 1. Owner Name (if other than Primary Insured) | Relationship | Home Phone |
|---|---|---|
| *INSURED* | | |

| Address | City | State | Zip | SSN/Tax ID # |
|---|---|---|---|---|

2. ☐ Joint Owner**   ☐ Contingent Owner**     Relationship _____   Home Phone ( )

| Address | City | State | Zip | SSN/Tax ID # |
|---|---|---|---|---|

**Check only one. Joint owners have right of survivorship. Contingent owner succeeds to ownership if Primary Owner dies.

## Section E – THE POLICY

1. Plan of Insurance *Secure UL*   2. Face Amount $ *5,000,000*   3. Planned Premium _____   4. Death Benefit Option: ☐ 1  ☐ 2

5. Premium Mode:  ☐ Single  ☒ Annual  ☐ Semiannual  ☐ Quarterly Direct  ☐ Quarterly BOM  ☐ Monthly BOM

6. Optional Coverage:

☐ Accidental Death Benefit on (Name) _____   ☐ WP or COP $ _____

☐ CPR - ☐ 1 Unit ($5,000)  ☐ 2 Units ($10,000)  ☐ Other _____

☐ PTR $ _____   ☐ AIR $ _____   on (Name) _____

## Section F – OTHER INSURANCE / REPLACEMENT INFORMATION

| | Yes | No |
|---|---|---|
| 1. Does anyone proposed for this insurance now have any life insurance or annuity: | | |
| a. in force or application(s) pending in any company? | ☒ | ☐ |
| b. which will be replaced, changed or borrowed against because of this application? (Circle applicable policy numbers.) | ☐ | ☒ |
| c. which will be part of a 1035 exchange because of this application? (Do not 1035 exchange an annuity to life insurance.) | ☐ | ☒ |

If a, b, or c is answered "Yes," give details below and submit appropriate replacement and/or 1035 exchange form(s) and policy illustrations.

| Person Covered | | | Person Covered | | |
|---|---|---|---|---|---|
| Company Name | | | Company Name | | |
| Face Amt. | ADB Amt. | Date Applied (M/D/Y) | Face Amt. | ADB Amt. | Date Applied (M/D/Y) |
| | | / / | | | / / |
| Policy Number | Plan Type | | Policy Number | Plan Type | |
| Person Covered | | | Person Covered | | |
| Company Name | | | Company Name | | |
| Face Amt. | ADB Amt. | Date Applied (M/D/Y) | Face Amt. | ADB Amt. | Date Applied (M/D/Y) |
| | | / / | | | / / |
| Policy Number | Plan Type | | Policy Number | Plan Type | |

LA 2000-CA                                                                 Page 2

7/6/06 4:27:11 PM

Elhouty000029

CONFIDENTIAL

## Section G – NON-PHYSICAL DATA AND TEMPORARY INSURANCE QUALIFIERS

1. In the past 3 years has anyone proposed for insurance:          Explain any "yes" answers in Details section on Page 4.

   a. had 3 or more traffic tickets, been arrested for driving under the influence of drugs or alcohol, or had their driver's license suspended or revoked?

   b. flown as pilot or crew member of any aircraft?

   c. engaged in sky or scuba diving, vehicle racing or mountain climbing?

2. Has anyone proposed for insurance EVER had an application for life insurance declined, postponed, rated or modified?

3. Are there any proposed insureds who have lived in the U.S. less than 3 years, plan to travel outside the U.S. in the next 2 years or are not U.S. citizens?

4. In the past 10 years, has anyone proposed for insurance

   a. been charged with a felony?

   b. used, or been arrested for possession, sale or delivery of, illegal drugs?

   c. sought or received treatment or advice for use of cocaine, heroin, narcotics, hallucinogens or other mind altering substances not prescribed by a physician?

   d. sought or received treatment or advice for coronary artery disease, stroke, AIDS (Acquired Immune Deficiency Syndrome), or been told they have had any of these disorders?

   e. been treated for or diagnosed with cancer other than basal cell skin cancer?

Do not submit payment with application if any of questions 4(a) through 4(e) are answered "yes" or not answered.

## Section H – HEALTH AND MEDICAL HISTORY

All questions apply to all proposed insureds including children proposed for coverage under CIR. Circle applicable conditions.
Explain any "yes" answers in Details section on Page 4.

| | | Yes | No |
|---|---|---|---|
| 1. | Has anyone proposed for insurance EVER been treated for, had any sign or symptom of, or been told that he/she had: | | |
| a. | high blood pressure or any disorder of heart or blood vessels? | | |
| b. | cancer or tumor? | REDACTED | |
| c. | dependency on or addiction to alcohol or any drug? | | |
| 2. | In the past 10 years, has anyone proposed for insurance been treated for, had any sign or symptom of, or been told that he/she had: | | |
| a. | epilepsy or seizures, disorder of brain or nervous system, mental or nervous disorder? | | |
| b. | diabetes, thyroid or glandular disorder? | | |
| c. | asthma, emphysema or other lung disorder? | | |
| d. | any disorder of digestive tract, liver or pancreas? | | |
| e. | anemia or other disorder of blood or blood cells except HIV status? | | |

| | | Yes | No |
|---|---|---|---|
| 2. | Continued | | |
| f. | disorder of kidneys, bladder or reproductive organs? | | |
| g. | arthritis or disorder of bones, skin or muscle? | | |
| 3. | Other than above, in the past 5 years, has anyone proposed for insurance: | | |
| a. | had a checkup, consultation, hospitalization, illness, surgery, or medical or diagnostic test? | | |
| b. | been advised to have a medical consultation, diagnostic test, or surgery which has not been done? | | |
| 4. | Other than above, is anyone proposed for insurance currently taking any prescription medication? | | |
| 5. | Does anyone proposed for insurance have a family history of heart disorder or cancer beginning before age 60 in any natural parent or sibling? (If "Yes," complete table below.) | | |

| Relative | Disorder | Age at Onset | Age at Death | Age if Living |
|---|---|---|---|---|
| | | | | |
| | | | | |

6. Primary Physician (Name, First and Last)          Date last seen    Reason                            JC          Result

REDACTED

Elhouty000030

CONFIDENTIAL

DETAILS of "Yes" answers in Sections G and H.

| Ques. # | Date | Proposed Insured | Symptoms, Diagnosis, Treatment | Physician/Facility Name, Address and Phone |
|---------|------|------------------|-------------------------------|--------------------------------------------|

# REDACTED

REMARKS

AGENT REMARKS / ADDITIONAL INFORMATION

FOR HOME OFFICE ENDORSEMENTS ONLY
If office corrections have been made, they may be found on the page immediately following the application.

LA 2000-CA                                                                 Page 4

7/6/06 4:27:11 PM

Elhouty000031

## SUPPLEMENTAL OTHER INSURANCE / REPLACEMENT INFORMATION

| Person Covered | | | Person Covered | | |
|---|---|---|---|---|---|
| Company Name | | | Company Name | | |
| Face Amt. | ADB Amt. | Date Applied (M/D/Y) | Face Amt. | ADB Amt. | Date Applied (M/D/Y) |
| Policy Number | Plan Type | | Policy Number | Plan Type | |

## SUPPLEMENTAL BENEFICIARY INFORMATION

| (a) Primary Beneficiary(ies)** | | | Address | | |
|---|---|---|---|---|---|
| Relationship | Age | SSN/Tax ID # | City | State | Zip |
| (a) Primary Beneficiary(ies)** | | | Address | | |
| Relationship | Age | SSN/Tax ID # | City | State | Zip |
| (b) Contingent Beneficiary(ies)** | | | Address | | |
| Relationship | Age | SSN/Tax ID # | City | State | Zip |
| (b) Contingent Beneficiary(ies)** | | | Address | | |
| Relationship | Age | SSN/Tax ID # | City | State | Zip |

## SUPPLEMENTAL MEDICAL DETAILS

LA 2060-CA

7/6/06 4:27:11 PM

Page 5

Elhouty000032

## PERMIT TO OBTAIN AND DISCLOSE CERTAIN DATA

A. Lincoln Benefit Life Company, its reinsurers, and consumer reporting agencies may get data about my (our) health, occupations, mode of living (except as may be related directly or indirectly to sexual orientation), avocations and any other non-medical information. I understand that the information obtained by use of this authorization will be used to determine eligibility for insurance and/or benefits, or for Lincoln Benefit Life Company to determine its obligations under the policy issued in connection with this application.

B. Any doctor, practitioner, medical or medically related facility, the Veterans Administration, the Medical Information Bureau, Inc. (MIB, Inc.), viatical settlement company, employer, consumer reporting agency, insurance company or insurance-support organization which has such data about me or my children may give such data to Lincoln Benefit Life Company when this permit or a copy of it is shown. All sources but the MIB, Inc., may give such data to agencies Lincoln Benefit Life Company has hired to retrieve the information.

C. Any request by Lincoln Benefit Life Company for medical records is on my behalf; the information must be provided within any requirements imposed by applicable state statutes governing patient access to medical records.

D. Data about mental illness, alcoholism, sexually transmitted diseases, and the use of drugs are to be included.

E. Lincoln Benefit Life Company or its reinsurers may make a brief report about me or my children to the MIB, Inc.

F. This permit is good for 30 months after it is signed.

G. Lincoln Benefit Life Company may obtain an investigative consumer report ("inspection report") on me.

☐ I want to be interviewed if such a report is obtained.

H. I have read this permit and know I may request a copy of it. I also have received the NOTICE REGARDING MIB, INC., NOTICE UNDER THE FAIR CREDIT REPORTING ACT and INSURANCE INFORMATION PRACTICES.

## DECLARATIONS

A. I (each undersigned) declare that all answers written on this application are full and correct to the best of my knowledge and belief. Except in Maine, Missouri, Oregon, and South Carolina, Lincoln Benefit Life Company is not presumed to know any information not in this application.

B. Lincoln Benefit Life Company may add to or correct the Application in the space "For Home Office Endorsements Only" on an addendum page immediately following the application. Any changes are agreed to if the policy issued is accepted by me (us), but written agreement will be obtained from me for any change in insurance amount, plan, benefits, payment class or age at issue. (In West Virginia and Pennsylvania, written consent will be obtained for any changes.)

C. Insurance will start only as provided in the Receipt and Temporary Insurance Agreement issued in connection with this application. If no receipt is issued, or if insurance under it has stopped and not started again, no insurance will start by reason of the application until the policy is delivered and the first payment is accepted by Lincoln Benefit Life Company. In this case, the insurance will start when the policy is delivered and the first premium paid in full. No insurance will start if at that time the health of all proposed insureds is not as described in the application.

D. I acknowledge that I have read and understand this application, including the notices regarding the Fair Credit Reporting Act, MIB, and Insurance Information Practices. I acknowledge receipt of these notices.

E. Only an officer of Lincoln Benefit Life Company may change this application or waive a right or requirement. No agent may do this.

ALL QUESTIONS WERE ASKED OF ME AND, IF APPLICABLE, THE ADDITIONAL/JOINT INSURED AND PARENT(S) OF ANY CHILDREN LISTED ON THIS APPLICATION. I (WE) HAVE READ ALL INFORMATION BEFORE SIGNING.

_Tustin, California_
SIGNED AT (City, State)

_Db 29 06_
DATE (M/D/Y)

X _____
SIGNATURE OF PRIMARY PROPOSED INSURED

X _____
SIGNATURE OF AGENT

X _____
SIGNATURE OF ADDITIONAL/JOINT INSURED

X _____
SIGNATURE OF OWNER

X _____
SIGNATURE OF PARENT (if ANY insured under age 15)

X _____
TITLE IF OWNER IS A BUSINESS OR OTHER ORGANIZATION.

LA 2000-CA

Page 6

7/6/06 4:27:11 PM

Elhouty000033

REDACTED

Elhouty000034

# LINCOLN BENEFIT LIFE COMPANY
Lincoln, Nebraska
## AMENDMENT OF APPLICATION AND STATEMENT OF HEALTH

I (we) hereby amend my (our) application for Policy 01N1288753 as follows:

    STANDARD NONSMOKER TABLE D SUBSTANDARD EXTRA PREMIUM
    ISSUED WITH FACE AMOUNT OF $2,000,000
    ISSUED WITH DEATH BENEFIT OPTION 1
    SECTION F QUESTION 1A, YES, $5,000,000 WITH AMERICAN
    GENERAL, BUT WITH THE ISSUE OF THE LBL POLICIES, IT IS
    AGREED THAT THE ULTIMATE TOTAL LINE OF LIFE INSURANCE WITH
    ALL COMPANIES WILL NOT EXCEED $5,000,000
    I DO NOT INTEND TO BORROW FUNDS TO PAY PREMIUMS, NOR DO I
    INTEND TO SELL THIS POLICY TO ANY PARTY

## STATEMENT OF HEALTH AND INSURABILITY

To the best of my (our) knowledge and belief, since the original application date, no person proposed for life insurance in this application:

1. has made application for life insurance elsewhere;
2. has consulted with or been examined or treated by a physician or practitioner; or
3. has had any change in health and insurability as indicated in Parts I and II of the application or exam, whichever is later.

All answers and statements contained in Parts I and II of this application and any amendments thereof and supplements thereto are full, complete and true to the best of my (our) knowledge and belief as though they were given on this date.

If there are any exceptions to the above statements, give full details in the space provided. If any exceptions are given, the policy must not be placed in force or delivered. This signed form and policy must be immediately returned to the Home Office Underwriting Department.

EXCEPTIONS:

This amendment and statement of health shall be part of the application for the above-numbered policy. CHANGES OR ALTERATIONS TO THIS FORM WILL NOT BE ACCEPTED.

Signed at _____        Date _____
              (City)                  (State)              (Month)        (Day)         (Yr.)

_____                 _____
Signature of Owner(s)                          Signature of Insured
SALIM FRIWAT                                   SALIM FRIWAT

_____                 _____
Signature of Joint Owner                       Signature of Joint/Additional Insured

To the best of my knowledge and belief the above statements regarding the insured's health are full, complete, and true.

_____
Signature of Agent
ABRAHAM MATTAR KHADER

LBL-1521, Rev. 7/98

Elhouty000035

# LINCOLN BENEFIT LIFE COMPANY

## AMENDATORY ENDORSEMENT

The following is hereby added to the Surrender Value/Cash Value provision of the policy:

"Any request for cancellation or surrender of this policy is effective on the date the request is received if the request is made in writing to us, or to an agent of our company. The request must contain at a minimum, all of the following:

1.   An unequivocal request for cancellation or surrender.
2.   The policy number of the policy to be cancelled or surrendered.
3.   The name of the insured on the policy to be cancelled or surrendered.
4.   The signature of the owner of the policy and the signature of any collateral assignee, irrevocable bene-ficiary, or other person having an interest in the policy through the legally binding document.
5.   Either the policy itself, or, in lieu of the policy, a statement that the policy itself has been lost or de-stroyed."

B. Eugene Wraith
President

S4-8243

Elhouty000036

# EXHIBIT B

LINCOLN BENEFIT LIFE
PO BOX 660191
DALLAS, TX 75266-0191

# LINCOLN BENEFIT LIFE
### C O M P A N Y

*A Member of Allstate Financial Group*

DTDATTFAADFFFATAFDTTAAFFFTTTTDTAFTAFATFATDFATTIFFFTFTDFAFTDFDTAFF

KAMIES ELHOUTY                                                    JULY 23, 2013
12208 APRIL ANN AVE
BAKERSFIELD CA 93312-3637

Re:    Policy Number: 01N1288753
       Insured: SALIM FRIWAT

Thank you for being a loyal Lincoln Benefit Life customer.

**Your Policy's Net Surrender Value**
We are writing to let you know that your net surrender value is not sufficient to cover all of the monthly insurance costs that are currently due for your policy. Therefore, your policy is currently in its grace period. Your policy also contains a Coverage Protection Rider. In addition, you currently have a shortfall in the Coverage Protection Account (CPA) value defined in this rider. This is important because the lapse coverage benefit provided by this rider is currently not available.

We will not be able to deduct the charges that are required for your policy until you make a payment of $55,061.49 Without this payment, your policy will terminate effective September 22, 2013, the end of your grace period.

**Your Next Steps**
To ensure your policy does not terminate, simply return this letter with your payment, which will help ensure that we credit the funds appropriately. If we do not receive the amount of $55,061.49, your policy will terminate effective September 22, 2013, the end of your grace period.

**Additional Information about Your Grace Period**
During this grace period, you may continue to receive regular premium notices for future premium due dates. Please keep in mind that the premium notices are not extensions of the grace period listed in this letter. **Unless you pay the amount listed above by the end of the grace period, this policy will terminate at the end of the grace period.**

**Additional Tax Information**
If your policy lapses and has an outstanding loan and/or accrued but un-capitalized interest at the time of the lapse, the loan will be taxable to you as ordinary income to the extent it exceeds your cost basis. If your policy is a modified endowment contract (MEC) and you are under age 59 1/2, the taxable amount of the loan may also be subject to a 10% penalty.

Your policy may be reinstated within the time period provided by your policy. Federal tax law provides that if your policy is reinstated more than 90 days after it lapses, we are required to report any income triggered at the time of the lapse to you and to the IRS on an IRS Form 1099R. In such a situation, if the lapse occurred during a seven-pay period, your reinstated policy will be a modified endowment contract (MEC). Distributions and loans from MECs are treated as taxable to the extent of policy gain, subject to ordinary income and an additional 10% federal tax penalty if made prior to age 59 1/2. A policy is in a seven-pay period if it is within seven years of its issue or within seven years of a material change.



**Have Questions? Please Contact Us**
If you have any questions regarding this or any other matter, please contact your agent or one of our service representatives toll-free at 1-800-525-9287. They will be happy to provide you with any additional information.

**Thank You**
Lincoln Benefit Life is committed to helping you achieve financial security. We look forward to working with you to ensure the life insurance coverage you have meets your needs now and in the future.

Customer Service

FLGRPD

cc:

Confidential

# EXHIBIT C

Information as of September 22, 2013

**LINCOLN BENEFIT LIFE**
AN ALLSTATE COMPANY

Lincoln Benefit Life Company
PO Box 660191
Dallas, TX 75266-0191

Page 1 of 11

Insured(s):          Salim Friwat

Policy Number :      01N1288753

Your representative:

                     Contract

ATTAFDFDTTFAAFFTFFTFAATFDTAADATAFATDFAAFAFDADDATFFAFTTAAFFDTTTAFA

KAMIES ELHOUTY
12208 APRIL ANN AVE
BAKERSFIELD CA 93312-3637

Dear Kamies Elhouty,

**Your Policy Has Lapsed**
It's our goal to always keep you updated about important policy matters. With that in mind, we want you to know that the grace period for your          premium payment          has expired, and your policy has lapsed. Please be aware that you no longer have the protection that your policy provided

**How to Reinstate**
Please contact us at 800-525-9287 for the amount of premium that will be required to reinstate your policy. Please submit the required premium along with the enclosed Application for Reinstatement. Checks for premium will be deposited when received. That deposit does not bind coverage; upon underwriting approval your coverage will be restored. If coverage cannot be reinstated, we will refund the premium received.

**Possible Tax Implications of Loan**
There are rules under Federal tax law that affect whether the lapse is taxable to you and, if you decide to reinstate your policy, whether you will be able to avoid those taxes.

If your policy lapsed with an outstanding loan, that loan, and any accrued but uncapitalized interest, is taxable to you as ordinary income to the extent they exceeded your cost basis. If your policy was a modified endowment contract (MEC) and you were under age 59 1/2 at the time of the lapse, the taxable amount of the loan may also have been subject to a 10 % penalty. Under Federal tax law, we are required to report any income triggered at the time of the lapse to you and to the IRS on an IRS Form 1099R.



Confidential

Policy number:   [ 01N1288753 ]                                              Page  2 of 11

Your policy may be reinstated within the time period provided by your policy.  Your policy also gives you the right to reinstate any loans outstanding at the time of the lapse.  You should carefully consider whether you want to reinstate your policy and, if you do, whether you want to reinstate any policy loans.  Even though you reinstate your policy and/or your policy loans, you may still be subject to the income taxes and penalties triggered by your policy's lapse.  There are several Federal tax rules you should keep in mind as you decide whether you should reinstate your policy and, if you do reinstate the policy, whether you want to reinstate any loans that existed at the time of the lapse.

> If you reinstate your policy within 90 days of its lapse, the lapse will not be treated as a taxable event and we are not required to report the lapse to you or the IRS - even if you had an outstanding loan at the time of the lapse.
> If you reinstate your policy after 90 days of the lapse, you will not be able to avoid any taxation triggered at the time of the lapse and we will be required to report the lapse to you and the IRS - even if you reinstate a loan.

Unless you elect otherwise, we will take the following action regarding reinstating your loan:

> If you are reinstating within 90 days of the date of lapse, we will reinstate your loan.
> If you are reinstating after 90 days of the date of lapse, we will not reinstate your loan

If you choose to reinstate your policy, please complete and return the enclosed loan reinstatement election form along with your reinstatement application.

Possible Tax Implications - MEC
If your policy lapsed during a 7-pay period and you reinstate your policy after 90 days of the lapse, your reinstated policy will be a (MEC).  A policy is in a 7-pay period if it is within 7 years of its issue, or within 7 years of a material change.  If your policy becomes a MEC, the following adverse tax consequences apply:

> All future distributions and loans will be treated as taxable to the extent of policy gain, subject to ordinary income and additional 10% Federal tax penalty if made prior to age 59 1/2.
> The tax law requires that all loans, loan interest capitalizations, and withdrawals taken from your policy within the 2 years prior to the lapse must also be treated as distributions of taxable gain first, subject to the 10% penalty if you were under age 59 1/2 at the time of the loan, interest capitalization, or withdrawal.
> If such loans, loan interest capitalization, and/or withdrawals occurred within 3 years of the reinstatement, and they must now be treated as taxable, we are required to report the transactions to you and the IRS on a form 1099R.
> If this situation applies to you, we urge you to speak with your tax advisor to determine whether you will need to file amended income tax returns for those years in which the transactions occurred.  We will not reimburse you for the costs associated with filing amended income tax returns.

Please consult a qualified tax advisor if you have any questions regarding potential taxable consequences that may occur as a result of reinstating your life insurance policy.

EFT Status
Upon reinstatement, if you would like to set your policy on EFT, please complete the enclosed EFT form and return it with the reinstatement application in the envelope provided.

Confidential

Policy number:   01N1288753                                          Page  3 of 11

Please Call If You Have Questions
If you have any questions regarding the information in this letter, please call          your representative        or contact      our
Customer Service Team at 800-525-9287.

Sincerely,

Customer Service
Phone:  800-525-9287
Web:    www.allstate.com
Fax:  866-525-5433

LAPSELTR



LBL/Elhouty-001037

Confidential

LBL/Elhouty-001038

# APPLICATION FOR REINSTATEMENT

☐ Lincoln Benefit Life Company ("The Company"), Lincoln, NE 68501, PHONE 1-800-525-9287, FAX 1-866-525-5433
☐ Allstate Life Insurance Company ("The Company"), Northbrook, IL 60062, PHONE 1-800-366-1411, FAX 1-866-525-5433
☐ Surety Life Insurance Company, ("The Company"), Lincoln, NE 68501, PHONE 1-800-669-7789, FAX 1-866-525-5433

Policy No. | 0 | 1 | N | 1 | 8 | 7 | 5 | | | |          Primary Insured _____

I (each undersigned) request that the Company reinstate this policy. I declare that all answers written herein are full and correct to the best of my knowledge and belief. Coverage will not start again until this request is approved by the Company and all required premiums and interest are paid. I understand and agree that the contestability period will begin again from the date of approval. If this request is not approved, any amount tendered will be returned.

## HEALTH AND MEDICAL HISTORY

Answer Questions 1 - 9 for all Proposed Insured(s) including children, and give details below.

1. In the past 10 years (or since becoming insured under this policy, if less) has any person insured or proposed for insurance under this policy been diagnosed with, or sought or received treatment or advice for:

| | | |
|---|---|---|
| a. high blood pressure, heart attack, stroke, or other disorder of heart or blood vessels? | ☐ Yes | ☐ No |
| b. cancer or tumor? | ☐ Yes | ☐ No |
| c. dependency on or addiction to alcohol or any drug? | ☐ Yes | ☐ No |
| d. diabetes? | ☐ Yes | ☐ No |
| e. epilepsy or seizures, disorder of the brain or nervous system, depression, or other mental or nervous disorder? | ☐ Yes | ☐ No |
| f. asthma, emphysema, sleep apnea, or any lung disorder? | ☐ Yes | ☐ No |
| g. any disorder of the digestive tract, liver or pancreas? | ☐ Yes | ☐ No |
| h. anemia or other disorder of blood or blood cells? | ☐ Yes | ☐ No |
| i. disorder of kidneys or reproductive organs? | ☐ Yes | ☐ No |
| j. arthritis or disorder of bones, skin or muscle? | ☐ Yes | ☐ No |

2. Other than previously disclosed, in the past 5 years, have any Proposed Insureds:

| | | |
|---|---|---|
| a. had a checkup, consultation, hospitalization, illness, surgery, or medical or diagnostic test (excluding HIV)? | ☐ Yes | ☐ No |
| b. been advised to have a medical consultation, diagnostic test (excluding HIV), or surgery that has not been done? | ☐ Yes | ☐ No |

3. Are any Proposed Insureds taking any prescription medications not previously disclosed? ☐ Yes ☐ No

4. Have any Proposed Insureds had more than one moving violation in the past 3 years or been convicted of driving under the influence or reckless driving in the past 10 years? ☐ Yes ☐ No

5. In the past 3 years, have any Proposed Insureds:

| | | |
|---|---|---|
| a. flown as a pilot or crew member of any aircraft? (if "yes" submit applicable questionnaire) | ☐ Yes | ☐ No |
| b. engaged in sky or scuba diving, vehicle racing, mountain or rock climbing? (if "yes" submit applicable questionnaire) | ☐ Yes | ☐ No |

6. Have all Proposed Insureds resided in the U.S. continuously for the last 3 years? ☐ Yes ☐ No

7. Do any Proposed Insureds plan to spend more than 2 weeks outside the U.S. in the next year? ☐ Yes ☐ No

## PRIMARY PROPOSED INSURED

8a. Name, Address, and Phone of Primary Physician or Medical Facility (if none, state "None")

8b. Have you visited this physician/facility in the last 5 years for any reason not already explained below? (if "yes", explain below) ☐ Yes ☐ No

8c. Height: _____ Feet _____ Inches
    Weight: _____ Pounds

| 8d. Do you currently use tobacco or nicotine? ☐ Yes ☐ No | 8f. If "no" to 8d, have you ever used tobacco or nicotine? ☐ Yes ☐ No |
|---|---|
| 8e. If "yes" to 8d, what type: ☐ Cigarettes _____ per _____ | If "yes", what did you use: ☐ Cigarettes ☐ Other _____ |
| ☐ Cigars _____ per ☐ Pipe | When did you quit (MM/YYYY)? _____ |
| ☐ Smokeless ☐ Nicotine gum/patch ☐ Other | |

FIC422CA                          Page 1 of 4                    (01/13)

60002054455aec040ca8949298f6dea1c700aa8dc 003010001425

Confidential

LBL/Elhouty-001040

**ADDITIONAL/JOINT INSURED**

9a. Name, Address, and Phone of Primary Physician or Medical Facility (if none, state "None")

9b. Have you visited this physician/facility in the last 5 years for any reason not already explained? (if "yes", explain below)   ☐ Yes   ☐ No

9c. Height:         Feet            Inches

Weight:         Pounds

| 9d. Do you currently use tobacco or nicotine? ☐ Yes ☐ No | 9f. If "no" to 9d, have you ever used tobacco or nicotine? ☐ Yes ☐ No |
|---|---|
| 9e. If "yes" to 9d, what type: ☐ Cigarettes ____ per | If "yes", what did you use: ☐ Cigarettes ☐ Other ____ |
| ☐ Cigars ____ per ____ ☐ Pipe ____ | When did you quit (MM/YYYY)? ____ |
| ☐ Smokeless ☐ Nicotine gum/patch ☐ Other ____ | |

**ADDITIONAL INFORMATION - Please list any details to Questions 1-9**

| Question Number | Proposed Insured Name | Details (name of condition, dates, how treated, current status) | Name and Address of Doctor or Medical Facility |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

6000205465Sae040ce894f2b89fddea1cf00ea8de 004010001426

FIC422CA                     Page 2 of 4                    (01/13)          

Confidential

LBL/Elhouty-001042

## PERMIT TO OBTAIN AND DISCLOSE CERTAIN DATA

A. The Company, its reinsurers, consumer reporting agencies, and other parties acting on The Company's behalf may get data about my health, medical history, prescription medication history and related information, mode of living (except as may be related directly or indirectly to sexual orientation), avocations, finances, credit history, driving record, and any criminal record. I understand that the information obtained by use of this authorization will be used to determine eligibility for insurance and/or benefits, or for The Company to determine its obligations under the policy issued in connection with this application.

B. Any doctor, practitioner, medical or medically related facility, laboratory, Pharmacy Benefit Managers, the Veterans Administration, the Medical Information Bureau, Inc. (MIB, Inc.), viatical settlement company, employer, consumer reporting agency, creditor, government agency, insurance or reinsurance company which has such data about me may give such data to The Company and its reinsurers when this Permit or a copy of it is shown. All sources but the MIB, Inc., may give such data to agents or agencies acting on behalf of The Company. The information as provided herein pursuant to the authorization will not be redisclosed unless authorized by me or otherwise required by law. Covered entities, as defined by the Health Insurance Portability and Accountability Act of 1996, may not condition treatment, payment, enrollment, or eligibility for benefits on whether this Permit is signed.

C. Any request by The Company for medical records is on my behalf; the information must be provided within any requirements imposed by applicable statutes governing patient access to medical records.

D. Data about mental illness, alcoholism, sexually transmitted diseases, and the use of drugs is to be included.

E. The Company or its reinsurers may make a brief report about me to the MIB, Inc.

F. This Permit is good for 24 months after it is signed. I understand that, if applicable, my electronic signature on this form operates as my original signature.

G. The Company may obtain an investigative consumer report ("inspection report") on me. ☐ I want to be interviewed if such a report is obtained.

H. I have read this Permit and know I may request a copy of it. I may revoke this Permit by writing to The Company. I also have received the Disclosures and Notices.

---

**Substitute Form W-9 - Under penalties of perjury, I certify that:**
1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. person (including U.S. resident alien).

The Internal Revenue Service does not require your consent to any provisions of this document other than the certification required to avoid backup withholding.

Signature of Owner, if other than insured (and title, if applicable, such as "Trustee" or "President")          SSN/TIN

Owner's E-mail Address

Signature of Joint Owner (and title, if applicable, such as "Trustee" or "President")          SSN/TIN

Joint Owner's E-mail Address

Signature of Primary Proposed Insured          SSN/TIN

Primary Proposed Insured's E-mail Address

Signature of Additional/Joint Proposed Insured          SSN/TIN

Signature of Parent/Legal Guardian (if any insured is under Age 15)

Parent/Legal Guardian's E-mail Address

| Signed at (City, State) | Date (MM/DD/YYYY) | Signature of Agent | |
|---|---|---|---|

F1C422CA          Page 3 of 4          (01/13)

Confidential

## DISCLOSURES AND NOTICES: Please leave with Applicant

### IMPORTANT INFORMATION REGARDING MEDICAL EXAMS

As part of the underwriting process we may ask for medical tests or exams to be completed at our expense. Common tests may include a paramedical exam, which will consist of questions about your medical history and measurements of your body including, but not limited to height, weight, blood pressure, and pulse. Blood and urine specimens are also generally collected. Undressing is not required for any of these tests. In some instances, an EKG (Electrocardiogram) may be required. An EKG is a recording of the electrical impulses in the heart. You will be asked to lay down with your shirt unbuttoned so the EKG leads can be placed on your chest.

If you have any questions about the specific tests that will be required of you, please feel free to contact your agent.

### NOTICE REGARDING THE MIB

Information regarding your insurability will be treated as confidential. I authorize The Company, or its reinsurers, to make a brief report of my personal health information to MIB. If you apply to another MIB member company for life or health insurance coverage, or a claim for benefits is submitted to such company, MIB, upon request, will supply such company with the information about you in its file.

Upon receipt of a request from you, MIB will arrange disclosure of any information in your file. Please contact MIB at 866-692-6901 (TTY 866-346-3642). If you question the accuracy of this information in MIB's file, you may contact MIB and seek a correction in accordance with the procedures set forth in the federal Fair Credit Reporting Act. The address of MIB's information office is 50 Braintree Hill Park, Suite 400, Braintree, Massachusetts 02184-8734.

The Company, or its reinsurers, may also release information from its file to other insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitted. Information for consumers about MIB may be obtained on its website at www.mib.com.

### INSURANCE INFORMATION PRACTICES

We will rely primarily on the information you give us. We may also get information from other sources, such as doctors, or other medical professionals who have treated you. In some cases, we may ask a consumer reporting agency to gather information and send us an investigative consumer report as explained in the Notice Under the Federal Fair Credit Reporting Act below. You may ask to be interviewed as part of the preparation of any such report.

In certain limited circumstances, we are allowed by law to disclose necessary items of personal information to third parties without your specific authorization. You have the right to be told about and to see and copy items of personal information about you that appear in our files, including information contained in the investigative consumer reports. You also have the right to seek correction of information you believe to be inaccurate.

We will send you a more detailed explanation of our information practices if you send us a written request. You may send your request to Underwriting Department, Allstate Life Insurance Company/Lincoln Benefit Life Company/Surety Life Insurance Company, P.O. Box 660191, Dallas, TX 75266-0191.

### NOTICE UNDER THE FAIR CREDIT REPORTING ACT

In compliance with the Federal Fair Credit Reporting Act, you are hereby notified that an investigative report may be made. This would be by personal interviews with neighbors, friends, associates, or other persons. This will concern the character, general reputation, personal characteristics, and mode of living (except as may be related to sexual orientation) of any person proposed for insurance. You may obtain additional information concerning the nature and scope of this investigation and a written summary of your rights under the Federal Fair Credit Reporting Act by contacting our Home Office. Our address is Allstate Life Insurance Company/Lincoln Benefit Life Company/Surety Life Insurance Company, P.O. Box 660191, Dallas, TX 75266-0191. Upon your written request, you will be informed whether or not an investigation was made by us. If so, you will receive the name and address of the consumer reporting agency involved. You may receive and inspect a copy of the Investigative Consumer Report by contacting the consumer reporting agency.

### NON-SUFFICIENT FUNDS (NSF) FEE

This notice is to inform you of a fee The Company may charge in the event that a life insurance policy premium payment and/or loan payment is not honored by your financial institution due to NSF. In the event there is a NSF transaction, we may charge a NSF fee up to $25.00 (fee varies by state). If your policy is on bank draft, we may draft your account for the NSF fee. If your policy is on direct bill, we may send you a paper bill for the NSF fee.

The NSF fee is separate from your policy premium payments. All policy premium payments must be made within the required time period to keep your policy in force.

FIC422CA                                 Page 4 of 4                    (01/13)        

Confidential

LBL/Elhouty-001045

Confidential

LBL/Elhouty-001046

## Agreement for Electronic Fund Transfer

☐ Lincoln Benefit Life Company, P.O. Box 660191 Dallas, TX 75266-0191 LIFE FAX: 1-866-525-5433 ANNUITY FAX: 1-877-525-2689

☐ Allstate Life Insurance Company, P.O. Box 660191 Dallas, TX 75266-0191 LIFE FAX: 1-877-255-1329 ANNUITY FAX: 1-877-525-2689

I (we) authorize Allstate Life Insurance Company or Lincoln Benefit Life Company ("The Company") and its other affiliates to debit my (our) account indicated to pay the premiums/payments, and other charges (such as non-sufficient funds), from the account listed on the attached documentation/voided check. In addition, I (we) have read and agree to the provisions which appear below.

This agreement is for: ☐ New  ☐ In-Force Policy(ies)/Contract(s). If for In-Force business, list policy/contract numbers to be billed from this account.

| 1. | | | | | | | 4. | | | | | | |
|----|--|--|--|--|--|--|----|--|--|--|--|--|--|

| 2. | | | | | | | 5. | | | | | | |
|----|--|--|--|--|--|--|----|--|--|--|--|--|--|

| 3. | | | | | | | 6. | | | | | | |
|----|--|--|--|--|--|--|----|--|--|--|--|--|--|

**This Agreement is effective immediately, and for new policies/contracts, the initial payment may be drafted at any time.** An alternate draft date may be selected below. For recurring payments, the draft date will be the same date the policy is issued for the applicable payment frequency. If a month does not have that day, it will be the last day of that month.

☐ I would like to use an alternate draft date _____    (Additional premium/payment may be required)

For Annuities: Please draft the amount of $ _____ monthly

> FOR CHECKING ACCOUNTS, ATTACH VOIDED CHECK
>
> (DEPOSIT TICKETS FOR CHECKING ACCOUNTS ARE NOT ACCEPTABLE)
>
> FOR SAVINGS ACCOUNTS, ATTACH BANK DOCUMENT ACCOUNT VERIFICATION

The term "debit entry" shall include charges to my (our) account by orders initiated by electronic means, checks drafts or any other order. I have the right to stop payment of a debit entry by giving notice to my Financial Institution ("The Institution") in such time as to afford The Institution a reasonable opportunity to act prior to charging my (our) account. After my (our) account has been charged, I (we) have the right to have the amount of an erroneous debit immediately credited to such account by The Institution up to 15 days following issuance of statement or 45 days after posting, whichever comes first.

**The Institution's** treatment of each account debit, check, draft or other order initiated by The Company, and its rights with respect to it will be the same as if it were signed personally by me (us). If any such entry is dishonored for any reason, **The Institution** will not be under any liability even though dishonor results in the forfeiture of insurance.

In addition, I (we) have read, fully understand and also agree to the provisions on this form _____

Dated (MM/DD/YYYY)

_____  _____  _____
Signature of Depositor      Signature of Joint Depositor, if any      Signature of Owner, if other than Depositor

**IT IS UNDERSTOOD THAT ALL DEBIT ENTRIES INITIATED BY THE COMPANY PURSUANT TO THIS AGREEMENT SHALL BE SUBJECT TO THE FOLLOWING PROVISIONS.**

This agreement shall not be effective until accepted by The Company.

**The Company** may initiate a debit entry under this Agreement that is different than the immediately preceding debit entry under this Agreement or may change the date of the billing cycle, provided The Company notifies me (either of us) in writing about the amount of the entry or the new date at least 10 days before initiating the entry to my (our) account or making the first entry to be affected by the new date.

**The Company** will not send premium/payment notices. Periodic statements, cancelled checks or other orders received by me (either of us) from The Institution(s) will be my (our) receipt.

This Agreement will end when (a) **The Company** or **The Institution** receives a written or phone request from me (either of us) to end it, or (b) when **The Company** or **The Institution** sends me (either of us) written notice within 30 days prior to **The Company's** or **The Institution's** termination of this Agreement.

This Agreement may be ended automatically by **The Company** if any debit entry has been refused by the **Institution** because of insufficient funds in my (our) account.

If the Agreement ends for any reason, and no premium/payment is unpaid beyond its grace periods, all premiums/payments due on any policy/contract covered by this agreement will become directly payable to **The Company** by me (us) until payment/premium plan is agreed to in writing.

FAA73EFT-4                    HOME OFFICE COPY                     (10/12)
                              Page 1 of 1



Confidential

LBL/Elhouty-001048

## Agreement for Electronic Fund Transfer

☐ Lincoln Benefit Life Company, P.O. Box 660191 Dallas, TX 75266-0191 LIFE FAX: 1-866-525-5433 ANNUITY FAX: 1-877-525-2689

☐ Allstate Life Insurance Company, P.O. Box 660191 Dallas, TX 75266-0191 LIFE FAX: 1-877-255-1329 ANNUITY FAX: 1-877-525-2689

I (we) authorize Allstate Life Insurance Company or Lincoln Benefit Life Company ("The Company") and its other affiliates to debit my (our) account indicated to pay the premiums/payments, and other charges (such as non-sufficient funds), from the account listed on the attached documentation/voided check. In addition, I (we) have read and agree to the provisions which appear below.

This agreement is for: ☐ New  ☐ In-Force Policy(ies)/Contract(s). If for In-Force business, list policy/contract numbers to be billed from this account.

1. ☐☐☐☐☐☐☐☐☐   4. ☐☐☐☐☐☐☐☐☐

2. ☐☐☐☐☐☐☐☐☐   5. ☐☐☐☐☐☐☐☐☐

3. ☐☐☐☐☐☐☐☐☐   6. ☐☐☐☐☐☐☐☐☐

**This Agreement is effective immediately and for new policies/contracts; the initial payment may be drafted at any time.** An alternate draft date may be selected below. For recurring payments, the draft date will be the same date the policy is issued for the applicable payment frequency. If a month does not have that day, it will be the last day of that month.

☐ I would like to use an alternate draft date _____  **(Additional premium/payment may be required)**

For Annuities: Please draft the amount of $_____ monthly

> FOR CHECKING ACCOUNTS, ATTACH VOIDED CHECK
>
> (DEPOSIT TICKETS FOR CHECKING ACCOUNTS ARE NOT ACCEPTABLE)
>
> FOR SAVINGS ACCOUNTS, ATTACH BANK DOCUMENT ACCOUNT VERIFICATION

The term "debit entry" shall include charges to my (our) account by orders initiated by electronic means, checks drafts or any other order. I have the right to stop payment of a debit entry by giving notice to my Financial Institution ("The Institution") in such time as to afford The Institution a reasonable opportunity to act prior to charging my (our) account. After my (our) account has been charged, I (we) have the right to have the amount of an erroneous debit immediately credited to such account by The Institution up to 15 days following issuance of statement or 45 days after posting, whichever comes first.

**The Institution's** treatment of each account debit, check, draft or other order initiated by The Company, and its rights with respect to it will be the same as if it were signed personally by me (us). If any such entry is dishonored for any reason, **The Institution** will not be under any liability even though dishonor results in the forfeiture of insurance.

In addition, I (we) have read, fully understand and also agree to the provisions on this form _____

Dated (MM/DD/YYYY) _____

SIGNATURES NOT REQUIRED ON CUSTOMER COPY
Signature of Depositor     Signature of Joint Depositor, if any     Signature of Owner, if other than Depositor

**IT IS UNDERSTOOD THAT ALL DEBIT ENTRIES INITIATED BY THE COMPANY PURSUANT TO THIS AGREEMENT SHALL BE SUBJECT TO THE FOLLOWING PROVISIONS.**

This agreement shall not be effective until accepted by The Company.

**The Company** may initiate a debit entry under this Agreement that is different than the immediately preceding debit entry under this Agreement or may change the date of the billing cycle, provided **The Company** notifies me (either of us) in writing about the amount of the entry or the new date at least 10 days before initiating the entry to my (our) account or making the first entry to be affected by the new date.

**The Company** will not send premium/payment notices. Periodic statements, cancelled checks or other orders received by me (either of us) from **The Institution(s)** will be my (our) receipt.

This Agreement will end when (a) **The Company** or **The Institution** receives a written or phone request from me (either of us) to end it, or (b) when **The Company** or **The Institution** sends me (either of us) written notice within 30 days prior to **The Company's** or **The Institution's** termination of this Agreement.

This Agreement may be ended automatically by **The Company** if any debit entry has been refused by **The Institution** because of insufficient funds in my (our) account.

If the Agreement ends for any reason, and no premium/payment is unpaid beyond its grace periods, all premiums/payments due on any policy/contract covered by this agreement will become directly payable to **The Company** by me (us) until payment/premium plan is agreed to in writing.

FAA73EFT-4          CUSTOMER COPY                    (10/12)
                    Page 1 of 1

600020545Se0f0c8942385fdca1c700eb8dc 008010001430

Confidential

LBL/Elhouty-001050

LINCOLN BENEFIT LIFE
AN ALLSTATE COMPANY

Lincoln Benefit Life Company
P.O. Box 660191, Dallas, TX 75266-0191
1-800-865-5237 FAX: 1-866-525-5433

# LOAN REINSTATEMENT ELECTION FORM

## 1. GENERAL INFORMATION - This section MUST be completed.

Policy #: ( NOTE: Only one Policy number per form please)

Date: (MM/DD/YYYY)

Telephone Number:

Insured's Name:

Joint Owner's Name:

Owner's Name:

Owner's Date of Birth:

Owner's SSN/TIN:

Owner's Street Address (No P.O. Boxes):

City/State/Zip:

## 2. DISCLOSURES - Please read this section

If this form is not completed and returned with the application for reinstatement, we will take one of the following actions with your loan:

- If you are reinstating within 90 days of the date of lapse, we will reinstate your loan.
- If you are reinstating after 90 days of the date of lapse, we will not reinstate your loan.

There are rules under federal tax law that affect whether the lapse is taxable to you and, if you decide to reinstate your Policy, whether you will be able to avoid those taxes.

If your Policy lapsed with an outstanding loan, that loan, and any accrued but uncapitalized interest, is taxable to you as ordinary income to the extent they exceeded your cost basis. If your Policy was a Modified Endowment Contract (MEC) and you were under age 59 ½ at the time of the lapse, the taxable amount of the loan may also be subject to a 10% penalty. Under federal tax law, we are required to report any income triggered at the time of the lapse to you and to the IRS on an IRS Form 1099R.

Your Policy may be reinstated within the time period provided by your Policy. Your Policy also gives you the right to reinstate any loans outstanding at the time of the lapse. You should carefully consider whether you want to reinstate your Policy and, if you do, whether you want to reinstate any Policy loans. Even though you reinstate your Policy and/or your Policy loans, you may still be subject to the income taxes and penalties triggered by your Policy's lapse. There are several Federal tax rules you should keep in mind as you decide whether you should reinstate your Policy and, if you do reinstate the Policy, whether you want to reinstate any loans that existed at the time of the lapse.

- If you reinstate your Policy within 90 days of its lapse, the lapse will not be treated as a taxable event and we are not required to report the lapse to you or the IRS -- even if you had an outstanding loan at the time of the lapse.

- If you reinstate your Policy after 90 days of the lapse, you will not be able to avoid any taxation triggered at the time of the lapse and we will still be required to report the lapse to you and the IRS - even if you reinstate a loan.

- If your Policy lapsed during a 7- pay period and you reinstate your Policy after 90 days of the lapse, your reinstated Policy will be a MEC. A policy is in a 7 - pay period if it is within 7 years of its issue, or within 7 years of a material change. If your policy becomes a MEC, the following adverse tax consequences apply:

  - All future distributions and loans will be treated as taxable to the extent of policy gain, subject to ordinary income tax and additional 10% federal tax penalty if made prior to age 59 ½.
  - The tax law requires that all loans, loan interest capitalizations, and withdrawals taken from your policy within the 2 years prior to the lapse must also be treated as distributions of taxable gain first, subject to the 10% penalty if you were under age 59 ½ at the time of the loan, interest capitalization, or withdrawal.
  - If such loans, loan interest capitalization, and/or withdrawals occurred within 3 years of the reinstatement, and they must now be treated as taxable, we are required to report the transactions to you and the IRS on a form 1099R.
  - If this situation applies to you, we urge you to speak with your tax advisor to determine whether you will need to file amended income tax returns for those years in which the transactions occurred. Lincoln Benefit Life Company will not reimburse you for the costs associated with filing amended income tax returns.

Please consult a qualified tax advisor if you have any questions regarding potential taxable consequences that may occur as a result of reinstating your life insurance Policy.

FIC354LBL

Page 1 of 2 - MUST Complete All Pages



(01/11)



Confidential

LBL/Elhouty-001051

Confidential

LBL/Elhouty-001052

## 3. SIGNATURES

Please check one of the following:

☐ If you wish to reinstate your loan, check here.
☐ If you do not wish to reinstate your loan, check here.

**Under penalties of perjury, I certify that:**

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including U.S. resident alien).

The Internal Revenue Service does not require your consent to any provisions of this document other than the certifications required to avoid backup withholding.

| Owner's Signature | | Phone # | Date (MM/DD/YYYY) |
|---|---|---|---|

| Joint Owner's Signature | SSN or Tax ID No. | Phone # | Date (MM/DD/YYYY) |
|---|---|---|---|

| Assignee, if applicable | SSN or Tax ID No. | | Date (MM/DD/YYYY) |
|---|---|---|---|

| Agent Name | Agent Number | Agent Phone # | Date (MM/DD/YYYY) |
|---|---|---|---|

**Sign Here**





600020545Sac0d0e894f2b896dca1c700ca8da 01901000143Z

Confidential

LBL/Elhouty-001053

# EXHIBIT D

# LINCOLN BENEFIT LIFE
### AN ALLSTATE COMPANY

October 1, 2013

KAMIES ELHOUTY
12208 APRIL ANN AVE
BAKERSFIELD CA  93312-3637

Re:   Insured:  Salim Friwat
      Policy Number:  01N1288753

Dear Kamies Elhouty:

Thank you for your recent payment on your life insurance policy.  Unfortunately, your payment was not received in time to continue your protection without interruption, and your life insurance policy is no longer active.

☒  To apply to re-activate this valuable coverage, you need to complete and return the enclosed application in the envelope provided by October 31, 2013.
A payment in the amount of $53,880.08 is needed to pay your policy current.

There are rules under Federal tax law that affect whether the lapse is taxable to you and, if you decide to reinstate your policy, whether you will be able to avoid those taxes.

If your policy lapsed with an outstanding loan, that loan, and any accrued but uncapitalized interest, is taxable to you as ordinary income to the extent they exceeded your cost basis.  If your policy was a modified endowment contract (MEC) and you were under age 59 ½ at the time of the lapse, the taxable amount of the loan may also have been subject to a 10% penalty.  Under federal tax law, we are required to report any income triggered at the time of the lapse to you and to the IRS on an IRS Form 1099R.

Your policy may be reinstated within the time period provided by your policy.  Your policy also gives you the right to reinstate any loans outstanding at the time of the lapse.  You should carefully consider whether you want to reinstate your policy and, if you do, whether you want to reinstate any policy loans.  Even though you reinstate your policy and/or your policy loans, you may still be subject to the income taxes and penalties triggered by your policy's lapse.  There are several Federal tax rules you should keep in mind as you decide whether you should reinstate your policy and, if you do reinstate the policy, whether you want to reinstate any loans that existed at the time of the lapse.

- If you reinstate your policy within 90 days of its lapse, the lapse will not be treated as a taxable event and we are not required to report the lapse to you or the IRS -- even if you had an outstanding loan at the time of the lapse.

- If you reinstate your policy after 90 days of the lapse, you will not be able to avoid any taxation triggered at the time of the lapse and we will still be required to report the lapse to you and the IRS - even if you reinstate a loan.

**Lincoln Benefit Life Company**
PO Box 660191 Dallas, TX 75266-0191
Fixed Policyholder service:  Phone 1.800.525.9287 Fax 866.525.5433 or Email service@allstate.com
Variable Policyholder service: Phone 1.800.865.5237 Fax 866.525.5433 or Email variableservice@allstate.com

Confidential

- If your policy lapsed during a 7-pay period and you reinstate your policy after 90 days of the lapse, your reinstated policy will be a (MEC). A policy is in a 7-pay period if it is within 7 years of its issue, or within 7 years of a material change. If your policy becomes a MEC, the following adverse tax consequences apply:

  o All future distributions and loans will be treated as taxable to the extent of policy gain, subject to ordinary income and additional 10% federal tax penalty if made prior to age 59 ½.
  o The tax law requires that all loans, loan interest capitalizations, and withdrawals taken from your policy within the 2 years prior to the lapse must also be treated as distributions of taxable gain first, subject to the 10% penalty if you were under age 59 ½ at the time of the loan, interest capitalization, or withdrawal.
  o If such loans, loan interest capitalization, and/or withdrawals occurred within 3 years of the reinstatement, and they must now be treated as taxable, we are required to report the transactions to you and the IRS on a form 1099R.
  o If this situation applies to you, we urge you to speak with your tax advisor to determine whether you will need to file amended income tax returns for those years in which the transactions occurred. We will not reimburse you for the costs associated with filing amended income tax returns.

Please consult a qualified tax advisor if you have any questions regarding potential taxable consequences that may occur as a result of reinstating your life insurance policy.

Once we have received the application and premium due, we will consider restoring your policy to an active status. Please be aware that no coverage is afforded until our Underwriting Department approves your application and we have received sufficient funds needed to pay your policy current. You may be required to take an insurance examination and laboratory tests before our Underwriting Department will approve your application. In this case, this office will advise you or your Lincoln Benefit Life agent.

If you have sent a premium payment with your request, a refund will be processed.

If you have any questions, please feel free to contact your agent or our Customer Service area at 1-800-525-9287.

Sincerely,

Randy DeCoursey
Vice President
Customer Service

Enclosure

LBL/Elhouty-001058

# EXHIBIT E

**Villanueva, Katherine L.**

| | |
|---|---|
| **From:** | David P. Beitchman <dbeitchman@bzlegal.com> |
| **Sent:** | Tuesday, June 16, 2015 5:10 PM |
| **To:** | Villanueva, Katherine L. |
| **Subject:** | Joint Statement of Undisputed Facts - Red Line |
| **Attachments:** | Joint Statement of Undisputed Facts - Red Line.docx |

Kate- nice talking with you yesterday- take read of the attached- Shani used track changes, should be fairly clear.  Let me know your thoughts. DB

1   Ryan S. Fife (Bar No. 235000)
2   DRINKER BIDDLE & REATH LLP
    1800 Century Park East, Suite 1500
3   Los Angeles, CA 90067
4   Telephone:  (310) 203-4000
    Facsimile:   (310) 229-1285
5   Email:       ryan.fife@dbr.com

6
    Jason P. Gosselin (admitted *pro hac vice*)
7   Katherine L. Villanueva (admitted *pro hac vice*)
8   DRINKER BIDDLE & REATH LLP
    One Logan Square, Suite 2000
9   Philadelphia, PA  19103-6996
10  Telephone:  (215) 988-2700
    Facsimile:   (215) 988-2757
11  Email:       jason.gosselin@dbr.com
12               katherine.villanueva@dbr.com

13  Attorneys for Defendant
14  Lincoln Benefit Life Company

15              UNITED STATES DISTRICT COURT

16             EASTERN DISTRICT OF CALIFORNIA

17

18  KAMIES ELHOUTY                  Case No. 1:14-CV-00676-LJO-JLT

19          Plaintiff,
                                    **JOINT STATEMENT OF**
20                                  **UNDISPUTED FACTS IN SUPPORT**
21      v.                          **OF DEFENDANT LINCOLN**
                                    **BENEFIT LIFE COMPANY'S**
22  LINCOLN BENEFIT LIFE            **MOTION FOR SUMMARY**
23  COMPANY, a Nebraska corporation, **JUDGMENT**
    and DOES 1 through 10, inclusive.
24                                  Hearing Date:
25          Defendants.            Time:
                                    Courtroom:
26
27                                  Complaint Filed:
28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -                               JOINT STATEMENT OF
                                    UNDISPUTED FACTS

Plaintiff Kamies Elhouty ("Plaintiff") and Defendant Lincoln Benefit Life Company ("Lincoln Benefit") hereby agree to the following undisputed facts for purposes of Lincoln Benefit's Motion for Summary Judgment:

## JOINT UNDISPUTED FACTS

1.      Lincoln Benefit issued a Flexible Premium Adjustable Life Insurance Policy on the life of Salim Friwat (Policy No. 01N1288753) (the "Policy"), which has an Issue Date of February 23, 2006.

2.      On or around August 2011, Lincoln Benefit received a request to change the designated owner of the Policy from the Salim Friwat ILIT to Kamies Elhouty.

3.      The Policy's Monthly Activity Day was the "23rd Day of [the] Month."

4.      The Policy provided: "If on any monthly activity day the net surrender value is less than the monthly deduction for the current policy month, you will be given a grace period of 61 days."

5.      The Policy provided: "If you do not make sufficient payment by the end of the grace period, the policy will lapse."

6.      The Policy provided: "We [Lincoln Benefit] will send a written notice to the most recent address we have for you at least thirty days prior to the day coverage lapses."

7.      From August 2011 through September 2013, ~~Plaintiff received~~ <u>Defendant mailed to Plaintiff</u> at least four documents ~~in the mail from Lincoln Benefit~~ regarding the Policy: (1) a confirmation of the ownership change; (2) an annual statement; (3) a Notice of Planned Payment; and (4) a notice that the Policy had lapsed.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

JOINT STATEMENT OF
UNDISPUTED FACTS

8.     The foregoing documents were addressed to Plaintiff at: 12208 April Ann Avenue, Bakersfield, California 93312-3637.

9.     ~~The United States Postal Service did not return any of the foregoing documents as undeliverable.~~

10.    On July 23, 2013, Lincoln Benefit generated and sent a notice to Plaintiff advising that the policy's "net surrender value is not sufficient to cover all of the monthly insurance costs that are currently due for your policy."

11.    The July 23, 2013 notice advised that, in the absence of payment, the "policy will terminate effective September 22, 2013, the end of year grace."

12.    One of Plaintiff's addresses in July 2013 was: 12208 April Ann Avenue, Bakersfield, California 93312-3637.

13.    ~~The July 23, 2013 notice was not returned to Lincoln Benefit as "undeliverable," nor was Lincoln Benefit advised at any point prior to the commencement of this lawsuit that the July 23, 2013 notice was allegedly not received by Plaintiff.~~

14.    The July 23, 2013 notice exhibits one of Plaintiff's correct addresses.

15.    On July 24, 2013, Lincoln Benefit sent Plaintiff a "Notice of Planned Payment" in the amount of $31,250, which was due ~~on~~ by August 23, 2013.

16.    On September 24, 2013, Plaintiff ~~attempted to make two premium payments~~ made one premium payment to Lincoln Benefit via his American Express credit card, account ending 9-61007~~,~~. Lincoln Benefit split Plaintiff's payment into two, one payment in the amount of $15,000 and one payment in the amount of $16,250, for a total of $31,250.

17.    ~~Prior to September 22, 2013, Plaintiff "learned that the surrender value of the [P]olicy was not sufficient to cover all of the monthly costs that were due for the . . . [P]olicy."~~

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT STATEMENT OF
UNDISPUTED FACTS

1   Dated: June ____, 2015                    DRINKER BIDDLE & REATH LLP

2

3                                             By: _____

4                                                 Katherine L. Villanueva
                                              Attorneys for Defendant
5                                             Lincoln Benefit Life Company

6
    Dated: June ____, 2015                    BEITCHMAN ZEKIAN, PLC
7

8
                                              By: _____
9                                                 David P. Beitchman
10                                            Attorneys for Plaintiff
                                              Kamies Elhouty
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -                        JOINT STATEMENT OF
                            UNDISPUTED FACTS

# EXHIBIT F

**Villanueva, Katherine L.**

| | |
|---|---|
| **From:** | Shani Kochav <skochav@bzlegal.com> |
| **Sent:** | Monday, July 06, 2015 2:10 PM |
| **To:** | Villanueva, Katherine L.; David P. Beitchman |
| **Subject:** | RE: Joint Statement of Undisputed Facts - Red Line |

Looks like that is the correct/latest draft.  Dave has authorized you to file with our edits using an electronic signature.

Thank you.

Best,
Shani Kochav, Esq.

BEITCHMAN | ZEKIAN
A PROFESSIONAL LAW CORPORATION

16130 Ventura Blvd., Suite 570
Encino, California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119
www.bzlegal.com

**From:** Villanueva, Katherine L. [mailto:Katherine.Villanueva@dbr.com]
**Sent:** Monday, July 06, 2015 10:39 AM
**To:** David P. Beitchman
**Cc:** Shani Kochav
**Subject:** RE: Joint Statement of Undisputed Facts - Red Line

Dave:

Here you go.  I have not yet heard back from the witness about the deposition.  I will follow up today and let you know.

Kate L. Villanueva
**Drinker Biddle & Reath** LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2535 *office*
(215) 988-2757 *fax*
Katherine.Villanueva@dbr.com
www.drinkerbiddle.com

**From:** David P. Beitchman [mailto:dbeitchman@bzlegal.com]
**Sent:** Monday, July 06, 2015 12:50 PM
**To:** Villanueva, Katherine L.
**Cc:** Shani Kochav
**Subject:** RE: Joint Statement of Undisputed Facts - Red Line

Kate- hope you had a nice 4th.  Confirm the last draft for me (perhaps send it over real quick) just because significant time has passed.  Also, we are booking flights for the PMK depo- haven't heard back from you.  Thanks

1

**David P. Beitchman, Esq.**

BEITCHMAN ZEKIAN
A PROFESSIONAL LAW CORPORATION

16130 Ventura Blvd., Suite 570
Encino, California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119

www.bzlegal.com

The information contained in this email message is intended
only for the personal and confidential use of recipients named
above. This message may be an attorney/client communication
and/or work product and as such is privileged and confidential.
If the reader of this message is not the intended recipient or an
agent responsible for delivering it to the intended recipient,
you are hereby notified that you have received this document in
error and that any review, dissemination, distribution, or copying
of this message is strictly prohibited.  If you have received this
communication in error, please notify us immediately by e-mail,
and delete the original message.

**From:** Villanueva, Katherine L. [mailto:Katherine.Villanueva@dbr.com]
**Sent:** Sunday, July 05, 2015 11:49 AM
**To:** David P. Beitchman
**Subject:** FW: Joint Statement of Undisputed Facts - Red Line

Dave:

Hope you had a great holiday weekend.  Can you please shoot me an email with authorization to file with your edits when you have a moment?  Thanks very much.

Kate L. Villanueva
**Drinker Biddle & Reath** LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2535 *office*
(215) 988-2757 *fax*
Katherine.Villanueva@dbr.com
www.drinkerbiddle.com

**From:** Villanueva, Katherine L.
**Sent:** Friday, June 26, 2015 4:41 PM
**To:** 'David P. Beitchman'
**Subject:** RE: Joint Statement of Undisputed Facts - Red Line

Dave:

I am not sure if I responded to this.  Do we have your consent to use your /s/ on the statement once we incorporate your edits?  Thanks, and have a good weekend.

Kate L. Villanueva
**Drinker Biddle & Reath LLP**
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2535 *office*
(215) 988-2757 *fax*
Katherine.Villanueva@dbr.com
www.drinkerbiddle.com

**From:** David P. Beitchman [mailto:dbeitchman@bzlegal.com]
**Sent:** Tuesday, June 16, 2015 5:10 PM
**To:** Villanueva, Katherine L.
**Subject:** Joint Statement of Undisputed Facts - Red Line

Kate- nice talking with you yesterday- take read of the attached- Shani used track changes, should be fairly clear.  Let me know your thoughts. DB

**************************************
Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
**************************************
This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.
**************************************


**************************************
Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
**************************************
This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.
**************************************