UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KAMIES ELHOUTY,** | 1:14-cv-00676 LJO JLT |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 35)** |
| v. | |
| **LINCOLN BENEFIT LIFE COMPANY, a Nebraska corporation, and DOES 1 through 10, inclusive,** | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Kamies Elhouty ("Elhouty" or "Plaintiff") filed this action in Kern County Superior Court on March 19, 2014, seeking a declaration that a Flexible Premium Adjustable Life Insurance Policy on the life of Salim Friwat (Policy No. 01N1288753) (the "Policy") with a Face Amount of $2,000,000 issued by Defendant Lincoln Benefit Life Company ("Lincoln Benefit" or "Defendant") did not lapse. Doc. 1. Defendant removed the single-count complaint on the basis of diversity jurisdiction. *Id*.

Before the Court for decision is Lincoln Benefit's motion for summary judgment on Plaintiff's sole claim in which Lincoln Benefit argues that the undisputed facts establish that the Policy lapsed and, more specifically, that Lincoln Benefit complied with the notice requirements of the Policy. Doc. 35. Plaintiff filed an opposition in which he claims that the Policy did not lapse because Lincoln Benefit did not comply with the Policy's notice requirements. Doc. 37. In the alternative, Plaintiff requests a continuance of this motion to permit further discovery. *Id*. at 11-14. Defendant replied. Doc. 38. The matter was taken under submission on the papers pursuant to Local Rule 230(g).

## II. FACTUAL BACKGROUND

Lincoln Benefit issued the Policy on February 23, 2006. Joint Statement of Undisputed Facts ("JSUF"), Doc. 35-1, at #1. In August 2011, Lincoln Benefit received a request to change the designated owner of the Policy from the Salim Friwat ILIT to Plaintiff Kamies Elhouty. JSUF #2. The Policy's "monthly activity day" was the "23rd Day of [the] Month." JSUF #3.

The Policy provided: "If on any monthly activity day the net surrender value is less than the monthly deduction for the current policy month, you will be given a grace period of 61 days." JSUF #4. The Policy further provided: "If you do not make sufficient payment by the end of the grace period, the policy will lapse." JSUF #5. The Policy also provided: "We [Lincoln Benefit] will send a written notice to the most recent address we have for you at least thirty days prior to the day coverage lapses." JSUF #6.

On July 23, 2013, Lincoln Benefit generated and sent a notice to Plaintiff advising that the Policy's "net surrender value is not sufficient to cover all of the monthly insurance costs that are currently due for [his] policy." JSUF #9. The July 23, 2013 Notice further advised that "[i]f we do not receive the amount of $55,061.49, your policy will terminate effective September 22, 2013, the end of your grace period." *See* Declaration of Katherine Villanueva ("Villanueva Decl."), Doc. 35-2, Ex. B, (July 23, 2013 Notice). The July 23, 2013 Notice also warned:

> During this grace period, you may continue to receive regular premium notices for future premium due dates. Please keep in mind that the premium notices are not extensions of the grace period listed in this letter. Unless you pay the amount listed above by the end of the grace period, this policy will terminate at the end of the grace period.

*Id*. One of Plaintiff's addresses of record as of July 2013 was 12208 April Ann Avenue, Bakersfield, California 93312-3637. JSUF #11. The July 23, 2013 Notice was addressed to Plaintiff at that address. JSUF ## 11, 12.

On July 24, 2013, Lincoln Benefit sent Plaintiff a "Notice of Planned Payment" in the amount of $31,250.00, reflecting a due date of August 23, 2013. JSUF # 13.

On September 22, 2013, Lincoln Benefit mailed to Plaintiff a notice that the Policy had lapsed. JSUF #7; *see also* Villanueva Decl., Ex. C Doc. 35-2.

On September 24, 2013, Plaintiff made a premium payment to Lincoln Benefit via his American Express credit card, which was split into two payments by Lincoln Benefit, one in the amount of $15,000.00 and another in the amount of $16,250.00, for a total of $31,250.00. JSUF #14.

On October 1, 2013, Lincoln Benefit sent Plaintiff a letter, again to the Ann Avenue address, indicating that his premium payment "was not received in time to continue your protection without interruption," so "your life insurance policy is no longer active." Villanueva Decl., Ex. D. The letter further indicated that a refund of the premium payment would be processed. *Id*.

### III. STANDARD OF DECISION

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with

affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id*. (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. DISCUSSION

In the sole claim in the removed Complaint, Plaintiff seeks a declaration that (1) the Policy "remains in full force and effect and did not lapse for non-payment of premium" and (2) the Notice of Planned Payment did not constitute the 30-day notice of cancellation or lapse as required under the Policy. Doc. 1-1 at p. 12 of 26. The focus of the present motion is the latter contention: whether the July

4

23, 2013 Notice constituted the required notice of cancellation or lapse. *See* Doc. 37 at 8-11 (arguing that there is a triable issue of material fact concerning the purported lapse of the Policy). Plaintiff also suggests, without directly arguing, that Lincoln General's past conduct in connection with administration of this Policy account could support a finding of waiver or estoppel as to the issue of lapse.

Plaintiff does not dispute that <u>mailing</u> of a lapse notice (as opposed to <u>receipt</u> of the same) is all that is required under the Policy in light of relevant California authorities. *See* Plaintiff's Statement of Disputed Facts ("PSUF"), Doc. 37-1 ("Defendant did not mail a 30-day lapse notice to Plaintiff as required under [the] Policy."); *see* Doc. 37 at 11 (while mentioning that Plaintiff believed he had until October 23, 2013 to make the premium payment because he never received a notice of lapse, simultaneously emphasizing that the "factual question" in this case is whether the grace period notice constituted the requisite lapse notice). Rather, Plaintiff's central contention in opposition to the motion for summary judgment is that the July 23, 2013 Notice was not the type of notice required by the Policy, which provides that, in the event the Policy enters the grace period: "We [Lincoln Benefit] will send a written notice to the most recent address we have for you at least thirty days prior to the day coverage lapses." JSUF #6. Specifically, Plaintiff maintains that by arguing that the July 23, 2013 Notice was the required lapse notice, "Defendant combines its duty to afford Plaintiff a 61-day grace period if payment is not received with its duty to mail a lapse notice to Plaintiff at least 30 days before the day coverage is set to lapse." Doc. 37 at 8-9. It is Plaintiff's contention that Defendant was required to mail a separate notice of lapse. See *id*. at 9.

Plaintiff's policy breach declaratory relief claim is based upon and governed by California law, pursuant to which interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 647-48 (2003).

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.... Such intent is to be inferred, if possible, solely

5

from the written provisions of the contract.

*Id*. (citing Cal. Civ. Code § 1639). The "clear and explicit" meaning of policy provisions, interpreted in their "ordinary and popular sense," controls, unless the terms are "used by the parties in a technical sense or a special meaning is given to them by usage." *Id*. (citing Cal. Civ. Code § 1644).

A policy provision will be considered ambiguous "when it is capable of two or more constructions, both of which are reasonable." *Id*. "But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Id*. In addition to applying general rules of contract interpretation, insurance agreements are interpreted broadly in favor of the policyholder. *Montrose Chem. Corp. v. Admiral Ins. Co*., 10 Cal. 4th 645, 667, (1995). In keeping with this general rule, "insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." *MacKinnon*, 31 Cal.4th at 648 (citation and quotation marks omitted).

The absence of a definition of a word or phrase in an insurance policy does not by itself necessarily create an ambiguity. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co*., 5 Cal.4th 854, 867 (1993).

> Any rule that rigidly presumed ambiguity from the absence of a definition would be illogical and unworkable. To avoid ... ambiguity ..., an insurer would have to define every word in its policy, the defining words would themselves then have to be defined, their defining words would have to be defined, and the process would continue to replicate itself until the result became so cumbersome as to create impenetrable ambiguity.

*Id*. at 865. Even when interpreting insurance policies, a court must look to the common understanding of the language, with an eye to reasonableness and context. *Id*. at 867.

> First, an insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. Second, [l]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract. There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application.

6

*Id*. (internal citations and quotations omitted). "Multiple or broad meanings do not necessarily create ambiguity." *Id*. at 868. "A word with a broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose." *Id*.

Here, Plaintiff has not identified and the Court cannot discern anything ambiguous about the policy language in question. The Policy provided: "If on any monthly activity day the net surrender value is less than the monthly deduction for the current policy month, you will be given a grace period of 61 days." JSUF #4. The Policy further provided: "If you do not make sufficient payment by the end of the grace period, the policy will lapse." JSUF #5. The Policy also provided: "We [Lincoln Benefit] will send a written notice to the most recent address we have for you at least thirty days prior to the day coverage lapses." JSUF #6. Plaintiff is correct that "nowhere in the policy does it state that Defendant is to mail notice of the commencement of the grace period; the policy merely states that the owner of a policy be provided with such a grace period." Doc. 37 at 9. However, neither does the Policy prohibit the mailing of a notice of commencement of the grace period. Nor does Plaintiff point to any Policy language that precludes mailing of the lapse notice 61 days before coverage is set to lapse (as opposed to 31 days). The plain language of the policy permits the lapse notice and the grace period notice to be one and the same. Here, the July 23, 3013 Notice explained the existence, scope, and terminal date of the grace period; the amount of payment that was required to avoid lapse; and the deadline for that payment in order to avoid lapse. The July 23, 2013 Notice, sent a full 61 days prior to the targeted lapse date of September 22, 2014, also complied with the Policy's[1] requirement that Defendant send written notice to

---

[1] The parties point to Cal. Ins. Code § 10113.71, which requires each life insurance policy issued in California provide a grace period of not less than 60 days from the premium due date. Plaintiff argues that § 10113.71(b) "requires an insurance company such as Defendant to mail a 'notice of pending lapse and termination of a life insurance policy ... *within 30 days after* a premium is due and unpaid,'" and suggests that the July 23, 2013 Notice fails to comply with this requirement *See* Doc. 37 at 9, 10 (emphasis in original). For the sake of clarity, the Court notes that Plaintiff omits to place this quotation in context. Sub-section 10113.71(b)(1) concerns the mailing of a "notice of pending lapse and termination" and provides such notice "shall not be effective unless mailed by the insurer to the named policy owner ... at least 30 days prior to the effective date of termination if termination is for nonpayment of premium." Cal. Ins. Code § 10113.71(b)(1). Sub-section 10113.71(b)(3) additionally requires that "[n]otice shall be given to the policy owner ... within 30 days after a premium is due and unpaid." Cal. Ins. Code § 10113.71(b)(3). Critically, Plaintiff admits that this provision does not apply here because the grace period at issue in this case was triggered because the "net surrender value of the policy was less than the monthly

7

the policyholder at least 30 days prior to the day coverage lapses. Plaintiff fails to explain how or why anything else was required under <u>any</u> alternative, reasonable interpretation of the policy language. To the contrary, the undisputed evidence demonstrates that Defendant complied with the Policy terms and that the Policy lapsed.

While it is true that Plaintiff made a premium payment in response to the regularly scheduled July 24, 2013 "Notice of Planned Payment" in the amount of $31,250.00, this is of no legal relevance (*i.e.*, this is not a "material" fact for purposes of preventing summary judgment). Under California law, the sending of a routine bill for premiums due by an insurer with knowledge of a cause for forfeiture does not amount to a waiver of the right to forfeiture if the insured does not comply with the demand related to the forfeiture process. *See In re First Capital Life Ins. Co.*, 40 Cal. App. 4th 1283, 1291-92 (1995). This is true even if the insured makes a premium payment in response to the routine bill, so long as the payment is returned promptly. *Id*. This is exactly what happened here. Lincoln Benefit promptly returned the premium payment with a letter explaining that the policy already had lapsed. Plaintiff's payment of the premium does not create a material dispute of fact.

Plaintiff next requests a continuance pursuant to Fed. R. Civ. P. 56(d) to depose Lincoln General's person most knowledgeable ("PMK") on matters of Lincoln General's practices and procedures concerning lapse and/or termination of life insurance policies and/or Defendant's past conduct in connection with administration of the Policy at issue in this case. "A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Moreover, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists." *Nidds v.*

---

deduction for the applicable policy month, not a late or unpaid premium payment." *Id*. at 9-10. Accordingly, section 10113.71's requirement that an insurer mail a notice "within 30 days after a premium is due and unpaid" is simply inapplicable here. In addition, Plaintiff does not bring a claim based upon the California Insurance Code. Rather, his claim is based entirely on the Policy's language. *See* Doc. 1-1

*Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).

Here, Plaintiff has failed to demonstrate how any of the evidence he claims will be elicited in the PMK deposition could possibly be dispositive of this motion. Plaintiff fails to explain how evidence regarding Defendant's standard practices and procedures will support a plausible argument that there is ambiguity in the relevant contract language. Likewise, Plaintiff fails to explain how evidence regarding Defendant's past conduct in the context of administering the Policy at issue in this case could be dispositive of the present motion.

Plaintiff's reliance on Lincoln Benefit's conduct in connection with a March 23, 2012 lapse notice is misplaced. It is undisputed that on March 23, 2012, Lincoln Benefit mailed Plaintiff a notice that, because the "net surrender value [was] not sufficient to cover all of the monthly insurance costs that are currently due on your policy... [the] policy is currently in its grace period." Declaration of David P. Beitchman ("Beitchman Decl."), Ex. A ("March 23, 2012 Notice"). The March 23, 2012 Notice further warned that in the absence of a payment in the amount of $49,316.29, the policy would terminate on May 23, 2012. *Id*. Plaintiff points out that on May 30, 2012, approximately seven days after the termination date set forth in the March 23, 2012 Notice, Defendant made a credit card payment to Defendant over the phone in the amount of $31,250.00, less than the amount demanded in the grace period notice. Beitchman Decl., Exs. C & D.

Plaintiff argues that the fact that Plaintiff's policy was not declared to have lapsed in 2012 is evidence of a "material fact demonstrating that the purported lapse of Plaintiff's policy in September 2013 was completely arbitrary and unsupported by the terms of Plaintiff's policy." Doc. 37 at 13. Although Plaintiff provides no legal authority explaining how or why this might be relevant to the present motion, "[a] past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time." *McCary v. John Hancock Mut. Life Ins. Co.*, 236 Cal. App. 2d 501, 508 (1965). In *McCary*, the insurer accepted six out of twelve premium payments after the


expiration of the applicable 31-day grace periods. *Id*. at 505. In each instance, the insurer sent a "late payment offer" to the insured, without availing itself of the right to forfeit the policy or require the insured to make an application for reinstatement. *Id*. Accordingly, this was deemed sufficient to support a finding of waiver and estoppel to assert the right to declare a policy lapse based upon the lateness of payment.

Here, however, Plaintiff omits to mention that he made a premium payment by check on March 26, 2012. Affidavit of Erin Starlin, Doc. 38-2, ¶ 3 & Ex. A. This payment took the Policy out of the grace period well before the expiration of the grace period on May 23, 2013. Therefore, the events in 2012 are simply not analogous to those in 2013. Therefore, Plaintiff has failed to explain how any evidence gained from deposition of Lincoln General's PMK could possibly be dispositive of this motion.

## V. CONCLUSION

For the reasons set forth above:

1. Defendant's motion for summary judgment is GRANTED, because the undisputed evidence demonstrates that Defendant complied with the Policy terms and that the Policy lapsed; and

2. Plaintiff's motion for a Fed. R. Civ. P. 56(d) continuance is denied, because Plaintiff has failed to explain how any evidence gained from deposition of Lincoln General's PMK could possibly be dispositive of this motion.

3. The Clerk of Court is directed to enter judgment for the Defendant and against the Plaintiff and to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated:   **August 5, 2015**                        **/s/ Lawrence J. O'Neill**
                                                                    UNITED STATES DISTRICT JUDGE